**SUN B. LEE, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 15342.

United States Court of Appeals
Ninth Circuit.

May 31, 1957.

James T. Davis, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., John H. Riordan, Jr., Richard H. Foster, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before STEPHENS, POPE, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Sun B. Lee, Lew Shee Hung, and Harry Fong were jointly charged with violations of, and conspiracy to violate, the narcotics laws of the United States. Lew Shee Hung and Harry Fong, named in all five counts of the indictment, pleaded guilty. Sun B. Lee, named in three of the counts, pleaded not guilty.[1] Convicted on a jury verdict, Lee was sentenced to three terms of imprisonment of five years each, to run concurrently. He was also fined ten dollars on each count.

On this appeal, Lee questions the admissibility of certain evidence, the propriety of certain remarks of the court and appellee's counsel while the admissibility of this evidence was being considered, and the giving of a cautionary instruction concerning the challenged evidence. One specification of error and some of appellant's argument are also directed to the sufficiency of the evidence.

The evidence relied upon by the government consists principally of the testimony of agents of the Federal Bureau of Narcotics. One of these agents testified that, concealing his identity, he had purchased heroin from Lew Shee Hung. It

---

1. In one of these counts, it was charged that, on June 27, 1956, Lee and the other two defendants unlawfuly sold, dispensed, and distributed heroin, thereby violating the Harrison Anti-Narcotic Act, 26 U.S. C.A. §§ 4704, 7237. In another count, it was charged that, on the same date, these three fraudulently and knowingly concealed and facilitated the concealment of the same heroin, knowing that it had been unlawfully imported, contrary to the Jones-Miller Act, 21 U.S.C.A. § 174. In the third count in which Lee was named, it was charged that he and the other two defendants, at a time and place unknown, knowingly and wilfully conspired together with the object of committing acts of the kind described in the other two counts, contrary to the conspiracy statute, 18 U.S.C.A. § 371.

was the theory of the prosecution that appellant was the supplier of these narcotics, and that Fong acted as a middleman, or contact, between Hung and appellant.

Testimony favorable to the government tends to establish the following facts: On June 14, 1956, after some preliminary negotiations, R. Charles Feldman, an agent of the Federal Bureau of Narcotics, gave Lew Shee Hung six hundred dollars for one ounce of heroin, which was to be delivered later. Hung told Feldman that he himself did not have the drug, but that he had a connection who was to remain unseen.

Hung took the six hundred dollars, left Feldman, and went directly to his apartment, where he remained for about an hour. He then went to the Mandarin Theater. There, Hung was seen to pace the lobby as though waiting for someone. After a few minutes, Hung was seen descending the balcony staircase with appellant. It was not shown that Hung spoke to appellant, or that anything was passed between the two men. Hung, however, was followed back to Feldman, where he delivered the narcotic.

Feldman testified that he received a second package of heroin on the evening of June 27, 1956. He testified that he had tried to make the purchase during the afternoon of that day, but that Lew Shee Hung had told him that "his man" was at the racetrack, and that no delivery could be made until evening. Feldman testified further that he gave $580 to Hung at approximately 5:00 p. m., and received the package of the drug at about 8:15 that night.

As to Hung's activities between 5:00 and 8:00 p. m. on the 27th of June, it was established that Hung again returned to his apartment, where he met Harry Fong. Both Hung and Fong proceeded to the Mandarin Theater. Hung left the theater about 8:05 p. m. At 8:15, he delivered one ounce of heroin to Feldman. He was not observed while on his way to the rendezvous with the agent.

There was testimony that appellant had spent June 27 at the Pleasanton Fairgrounds, where a racetrack is located. He was followed from Pleasanton into San Francisco in the early evening, and was observed going into several business establishments in Chinatown. The agent watching him "discontinued from him" at about 7:40 p. m. Appellant was apparently not seen by the narcotics agents until the time of his arrest at about 10:20 that night. At the time of appellant's arrest, he was carrying about ninety dollars. Included in this money were five ten-dollar bills. These were identified, by means of recorded serial numbers, as a part of the $580 which Feldman had given to Lew Shee Hung earlier in the day.

Appellant took the witness stand in his own defense. He denied that he had participated in the narcotics transactions of June 14 or 27, and testified that he had never engaged in such traffic. Appellant stated that he did not know Hung. He testified that he knew Fong, since they both belonged to the same Club. He accounted for the fifty dollars of Narcotics Bureau money which was found on his person on June 27 by stating that he had borrowed it from Fong on that evening at the Mandarin Theater.

In rebuttal, and over appellant's vigorous objection, the government was permitted to introduce evidence showing that, in March, 1954, a search warrant had been executed at an apartment occupied by appellant. This resulted in the return of a twenty-dollar federal reserve note. This note was one which had been listed by the Federal Bureau of Narcotics as advance funds used by that agency in its law enforcement work. It was further testified that this note had actually been used for the purchase of narcotics some time previous to the issuance of the search warrant.

Appellant contends that this rebuttal testimony should have been excluded. He invokes the rule that evidence connecting a defendant with prior acts of misconduct is not to be received unless it has a direct tendency to prove the

crime presently charged. It is asserted that the evidence in question has no such tendency. It does not, appellant argues, relate to motive, intent, absence of mistake or accident, underlying scheme or design, identity, or any other matter generally regarded as tending to prove the crime charged.[2]

The government, on the other hand, while apparently conceding that the rebuttal testimony tends to connect appellant with a prior act of misconduct, contends that such evidence is nevertheless admissible. It argues that the inference appellant wanted the jury to draw from his testimony that he borrowed the fifty dollars from Fong was that the fact that this was Bureau of Narcotics money was due to coincidence, mistake, accident, or inadvertence. The rebuttal testimony, it is argued, tended to negative such an inference, and therefore had a direct tendency to prove the crime charged. Carrullo v. United States, 8 Cir., 184 F.2d 743, is cited by the government in support of this proposition.

The government misconceives appellant's purpose in testifying that the fifty dollars was received from Fong as a loan.

■ It was proper for the government to produce evidence in its case-in-chief to the effect that the money found in appellant's possession was part of the advance funds an agent had given Hung. This, along with other circumstances, tended to prove that there had been a contact between appellant and Hung, or Hung's associate Fong, between the time Hung received the money from the agent and the time Hung delivered narcotics to the agent. It also gave rise to a permissible inference that, on the occasion of that contact, appellant had delivered some article, or rendered some service, to Hung or Fong.

■ But as soon as appellant testified that he received fifty dollars from Fong that evening, it became at once immaterial whether this fifty dollars was part

of the serially-recorded money the agent had given Hung. Appellant's own admission then established the fact that there had been such a contact. It also gave rise to the same permissible inference that appellant had delivered an article to, or performed a service for, Hung or Fong.

Appellant did not deny that this was Bureau of Narcotics money. He was not asked if he knew it was this kind of money, and therefore did not deny that he knew it. He testified only that he received the money from Fong as a loan. His purpose in so testifying was not to invite an inference that the immaterial fact that the money was serially recorded was a coincidence, mistake, accident, or due to inadvertence. He sought only to negative the charge that the money, whatever its source, was received by him as part of a narcotics transaction.

If the money was received as a loan, it would be immaterial whether it was Bureau of Narcotics money, or whether appellant knew of its tainted source. This money was neither contraband, counterfeit, nor stolen. Its mere possession by appellant or anyone else would not be a crime.

The Carrullo case and the doctrine expressed therein can have no application to the instant case. In Carrullo, the defendant was charged with the unlawful possession of counterfeit United States notes. The defense was that he was unaware of the character of the notes, and that he must have acquired them by chance in the transaction of his day-to-day business. On this issue, the court of appeals said: " * * * It was clearly competent for the government to negative innocent intent by proof of repetitions of instances * * *. It is the repetition of the instances that tends to negative innocence of intent and the probability of coincidence." 184 F.2d at 746. See, also, 2 Wigmore on Evidence (3d ed.) §§ 311, 313.

2. These categories of evidence are usually characterized as exceptions to the general rule forbidding the reception of evidence concerning prior misconduct. See Smith v. United States, 9 Cir., 173 F.2d 181, 185.

The facts of the instant case, unlike Carrullo, present no issue of guilty knowledge concerning the source of the money. The only question is whether the money was a loan from Fong or whether it was paid to appellant in exchange for heroin. The government's rebuttal evidence did not tend to prove that appellant sold heroin to Fong. It did tend to prejudice appellant greatly in the eyes of the jury.

■ Nor are we persuaded, as the government contends, that appellant "opened the door" to the admission of evidence of this nature. We do not here decide whether appellant's testimony was sufficient to put his character in issue. For it is well settled that, even where a defendant becomes a witness in a criminal case and does put his character in issue, the prosecution may not then discredit his character by proof of specific acts of misconduct.[3]

We conclude that the admission of the rebuttal testimony was prejudicial error.

It is unnecessary to discuss the specifications of error concerning remarks of court and counsel, and the giving of certain instructions. These asserted errors relate to the reception of the rebuttal testimony, and hence will not recur on the new trial which must be ordered.

Appellant also specifies as error,[4] and argues, the insufficiency of the evidence. There is, however, no specification of error directed to the denial of appellant's motions for a judgment of acquittal. Moreover, appellant does not here ask that we remand with directions to enter such a judgment, but asks only for a new trial.[5]

■ When the court of appeals, on review in a criminal case, thinks the evidence previously adduced was insufficient to sustain a conviction, it may, pursuant to the authority granted by 28 U.S.C.A. § 2106, nevertheless reverse and remand for a new trial, if the court believes that justice will be served by such an order.[6] While we think that the evidence introduced at the first trial was not sufficient to sustain a conviction, we find ourselves unable, upon the basis of what now appears in the record, to determine that such insufficiency could not be supplied upon another trial. An appellate court is often too far removed from the actual processes of adducing proof and from the problems of having witnesses available at the time the case is set for trial to arrive at a reliable determination as to the impossibility of supplying the missing proof on a new trial. We think, therefore, that justice would best be served here by reversing and remanding the case with directions to grant the appellant a new trial. We wish to make it clear, however, that this court is not thereby directing the court below to go through with a manifestly useless trial if upon such remand the trial court, after procuring aid from counsel in the case, determines that a better case cannot be made upon a new trial.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

3. Michelson v. United States, 335 U.S. 469, 477, 69 S.Ct. 213, 93 L.Ed. 168; Coulston v. United States, 10 Cir., 51 F.2d 178.

4. Denominated in appellant's brief as "statement of points relied on."

5. He closed his opening brief with this request:
   "It is the appellant's earnest contention that the only fair way to remedy what occurred in this trial is to grant a new trial at which time the facts can be considered by another jury without the introduction of this highly prejudicial testimony which was clearly admitted in error. The appellant is entitled to a fair trial; a trial free of the prejudice coming from innuendo and from the theory of guilt by association."

6. Bryan v. United States, 338 U.S. 552, 559, 70 S.Ct. 317, 94 L.Ed. 335.