UNITED STATES of America, Plaintiff-Appellee,

v.

George LEFKOWITZ, Joseph P. Dryja, Richard Emond, Defendants-Appellants.

No. 38, Docket 26185.

United States Court of Appeals Second Circuit.

Argued Sept. 27, 1960.

Decided Nov. 10, 1960.

---

**312**

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y. (Judith Gelb, Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Joseph R. Crowley, New York City, (Manes, Sturim & Laufer, New York City, on the brief), for defendant-appellant Lefkowitz.

James J. Hanrahan, New York City, for defendant-appellant Dryja.

Abraham Lebenkoff, New York City (Lebenkoff & Freundlich, New York City, on the brief), for defendant-appellant Emond.

Before LUMBARD, Chief Judge, and TUTTLE * and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

George Lefkowitz, Joseph P. Dryja and Richard Emond appeal from judgments of the District Court for the Eastern District of New York adjudging them to be convicted, upon a verdict of guilty, of violation of 18 U.S.C. § 659. We are constrained to reverse the convictions and order a new trial for what we deem prejudicial errors in the instructions to the jury.

The indictment charged that defendants received and had in their possession 352 cases of shoes and other merchandise valued at some $40,000, stolen from a motor truck while moving as an interstate shipment from Dorchester, Massachusetts, to New York City, knowing the cases to have been stolen. The truck itself was stolen while parked on a street near the J. A. Garvey Transportation Company terminal in Long Island City in the early morning of February 19, 1959. A few hours later it was backed into a warehouse in Brooklyn owned by Lefkowitz; there it was partly unloaded. Later in the day the truck was driven out of the warehouse and parked a few blocks away where an F. B. I. agent found it. Two days later F. B. I. agents interviewed Lefkowitz. He freely disclosed the receipt of the merchandise, claimed that this had been preceded by a personal inquiry and a telephone call from a man theretofore unknown to him and still known only as "Lou," and contended, as he did later at the trial, that the transaction was innocent on his part. Two of Lefkowitz's employees, Plummer and Johnson, identified Emond as having been present at the warehouse during the unloading of the truck; Plummer said Emond was "under the wheel" and then helped in the unloading. This identification testimony was challenged. Two men in addition to the driver were on the truck when it entered the warehouse. The government's theory is that Dryja either was one of them or came to the warehouse as a customer; the evidence offered to support this we shall discuss below. Lefkowitz took the stand in his own defense and called seven witnesses to his good reputation. Neither Dryja nor Emond testified; both offered evidence intended to show their presence elsewhere at the critical times.

█ At the request of the government the court charged the jury:

"Possession of recently stolen goods casts upon those holding them the burden of explaining their possession and you may infer guilty

* Of the Fifth Circuit, sitting by designation.

knowledge of the theft, in the absence of explanatory facts and circumstances consistent with innocence."

Lefkowitz's counsel promptly excepted; Emond's counsel later joined in the exception.[1] After having deliberated for some time, the jury returned to ask the court the following question:

"Regarding your charge: Did your Honor state that in respect to recently stolen merchandise, that the burden of proof rests with the defendant that he did not know the merchandise was stolen if he was in possession of same?

"Please explain burden of proof."

The court answered:

"The burden of proof rests upon the Government throughout the case, that is No. 1.

"Now, I quoted from an authority having to do with the possession of recently stolen goods.

"That opinion says that: 'Possession of recently stolen goods casts upon those holding them the burden of explaining their possession and you may infer guilty knowledge of the theft, in the absence of explanatory facts and circumstances consistent with innocence.'

"Now, that may be rather a close question. Bear in mind what I said, the burden of proof is always on the Government. In considering whether the Government has sustained its burden of proof, you have the right further to consider whether a defendant shown to be in the possession of recently stolen goods has explained to you facts which would enable you to conclude that he was innocent.

"Have I made it reasonably clear, gentlemen?"

It has long been held that "Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence." Wilson v. United States, 1896, 162 U.S. 613, 619, 16 S.Ct. 895, 898, 40 L.Ed. 1090. This general rule applies to the specific offense here charged. Pearson v. United States, 6 Cir., 1951, 192 F.2d 681, 689. On the other hand, in United States v. Sherman, 2 Cir., 1948, 171 F.2d 619, 624, certiorari denied sub nom. Grimaldi v. United States, 1949, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738, Judge Learned Hand criticized an instruction that one in possession of recently stolen goods "is presumed to know that they were stolen," saying:

"* * * While we have held a number of times that the jury may find in the accused's unexplained possession of stolen goods enough evidence to convict, we have never intended to indicate that the jury should be directed that it was required by a rule of law to make this inference. In discussions among lawyers and judges of the difference between a permissible inference and a presumption, the terminology may be unimportant. But the jury may be misled by the word 'presumption'; and here it may have interpreted that word as far stronger than a permissible inference."

See, accord, Balman v. United States, 8 Cir., 1938, 94 F.2d 197, 199; Barfield v. United States, 5 Cir., 1956, 229 F.2d 936, 939, 940; 9 Wigmore, Evidence (3d ed.), p. 417. The same reasoning condemns an instruction couched in terms of "burden" on the defendant, even when, as here, it is joined with an entirely proper phrasing in terms of inference. United States v. Allegrucci, 3 Cir., 1958, 258 F.2d 70, 73–74. The language of the judge's charge, which was repeated on

---

[1]. We do not regard the failure of Dryja's counsel to except as barring Dryja from seeking reversal for error in the charge; Lefkowitz's exception called the matter to the judge's attention and further exception would have been fruitless.

the jury's return, appears to have been derived from the opinion in Yielding v. United States, 5 Cir., 1949, 173 F.2d 46, 48. However, the transcript of record in the Yielding case shows that no such language was used in the charge, and the Barfield case, supra, in the same circuit, creates the gravest doubt whether such a charge would be sanctioned there. The error in the charge was not corrected by the answer to the jury's inquiry; indeed, it may have been aggravated. True the judge reemphasized that "the burden of proof is always on the Government." However, not only did the instruction repeat the "burden of explaining" language but its final phrase may well have left the jury with the impression that the defendant was required to establish his innocence rather than to raise a reasonable doubt of his guilt.[2]

If it be argued that these criticisms are an undue refinement, the answer is twofold. As said in Balman v. United States, supra, 94 F.2d at page 200, "we feel it to be important that no precedent should be indulged which may possibly lead to laxity of statement in a matter so important in criminal proceedings. * * *" Moreover, here we know the jury was concerned; and the Supreme Court has emphasized, over a dissent making the very point of over-nicety, the crucial importance of completely accurate statement by the judge at that critical moment in a criminal trial when the jury interrupts its deliberations to seek further explanation of the law. Bollenbach v. United States, 1946, 326 U.S. 607, 611–614, 616–618, 66 S.Ct. 402, 90 L.Ed. 350.

█ Lefkowitz also asks reversal because of three remarks in the prosecutor's summation. Only one of these warrants comment. The argument of Lefkowitz's counsel, Mr. Heller, had stressed the defendant's good business and personal reputation. The prosecutor's counter to this was as follows:

"If you went that far you would say that is fine. This is a speech which would get Mr. Lefkowitz in any Rotary, in any Lions Club, in any Moose, or in any fraternal organization. As far as he went Mr. Heller was perfectly correct.

"But he didn't go far enough.

"There is another side to Mr. Lefkowitz's character, another side that Mr. Heller doesn't know; another side that lives on the periphery of the law; another side that is a parasite which lives on the unjust earnings of others while maintaining the dignified cloak of a civilized human being in society, a man who says to the world, here I am. I am a pillar of society.

"And yet in his other hand he receives stolen goods and profits by the crimes of others. This is the parasite that I ask you to convict. And this is why I ask you to do so—

"Mr. Heller: These remarks are wholly inflammatory. They are not based on any evidence that Mr. Lefkowitz is a parasite, and that he lives off the fruits of other people.

"The Court: It is customary for lawyers to use arguments that they think are persuasive. The jury understands that this is an argument and not a statement of the facts."

Apart from the needlessly colorful language, the peculiar vice of the argument lay in the implication, perhaps unintended, that the government knew a good deal about Lefkowitz *dehors* the instant case "that Mr. Heller doesn't know" and that was not in evidence. In view of our ruling with respect to the charge, we need not determine whether a reversal as to Lefkowitz would be required on this

---

2. See the exposition by Lord Chief Justice Goddard in Regina v. Hepworth [1955], 2 Q.B. 600, 602, recommending that, in prosecutions for receiving stolen property, the trial judge should charge that: "* * * if an explanation for possession of the goods is given by the accused, although the jury may not be convinced that it is true, if they think that it may be true it would mean that the prosecution have not proved the case because the jury would remain in some degree of doubt."

ground; it will suffice to voice the expectation that on the retrial the prosecutor will abstain from any comment to the jury that might be understood as going beyond fair argument on the evidence presented.

All three defendants contend that the trial judge erred in failing to grant their motions for acquittal. We need not discuss this as to Lefkowitz and Emond, in whose cases the evidence was plainly sufficient for submission to the jury. Dryja's case is much closer. The principal item was the testimony of an F. B. I. fingerprint examiner who had examined the stolen cartons on February 24, 1959. Four of Dryja's fingerprints were found on two of the 352 cartons; one of these contained an electric motor. One hundred fifty-four other fingerprints were found, none of which were identified. The government supplemented this with testimony of the F. B. I. agent who interviewed Dryja after arresting the defendant in late June. Dryja told the agent he had never been in New Hampshire and had not been in the Boston area for several years; since the shipments had originated in Maine, New Hampshire and Boston, this heightened the probability that Dryja's fingerprints had been placed on the cartons in the interval after the theft and before the recovery. The other evidence claimed to support the submission of Dryja's case to the jury was that he denied knowing Lefkowitz and Emond and ever having been to the warehouse; that Dryja was an electrician and that six of the electric motors in the shipment were missing; and that he disappeared from what had been his home in Brooklyn in early March after he learned the F. B. I. was looking for him and was not picked up until nearly four months later.

The government relies on decisions that fingerprint evidence suffices for submitting to a jury the issue of possession of narcotics under 21 U.S.C.A. § 174, Stoppelli v. United States, 9 Cir., 1950, 183 F.2d 391, 393, certiorari denied 1950, 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631; United States v. Pisano, 7 Cir., 1951, 193 F.2d 361, 365, both over dissents. Accepting these decisions *arguendo*, we think there is a significant difference between drawing an inference of possession of narcotics from fingerprints on glassine envelopes or small packages and wrapping paper and drawing such an inference from fingerprints on good-sized cartons of ordinary merchandise. Mere touching is not possession. Yet, in the case of cartons like those on the Garvey truck, the presence of fingerprints is at least as consistent with a touching in the course of unloading as it is with the exercise of control.

However, the government was not obliged to prove that Dryja had received or taken possession of the stolen goods; it sufficed if the prosecution could show he aided and abetted one who had, 18 U.S.C. § 2. The fingerprints, along with Dryja's admission that he had not been near the source of the shipment, sufficed to create an issue for the jury whether Dryja had handled the goods during the theft. Still, an affirmative finding on this was not enough; the government had also to show that Dryja knew the goods were stolen. Johnson v. United States, 8 Cir., 1952, 195 F.2d 673, 675. Proof that he touched the goods during the time of the theft, as distinguished from possessing them, would not alone warrant an inference of guilty knowledge even in the absence of explanation; and the question is whether, taking all the evidence, this was "substantial enough to establish a case from which the jury may infer guilt beyond a reasonable doubt." Cuthbert v. United States, 5 Cir., 1960, 278 F.2d 220, 224. We think it was, although only by a hair's breadth. The testimony was quite inconsistent with Dryja's having been an innocent participant in the unloading. Hence, if the jury thought the fingerprints, along with his admission of not having been near the source of the shipment, placed him in the warehouse between February 19 and 21, his only probable roles were as one of the men on the truck or as a customer. The former role was unlikely to be consistent with

innocence; the latter might or might not be. But once the jury put Dryja in the warehouse during the two-day period of the theft, as it had every right to do, his denial of ever having been there would be false and therefore some indication of guilt; and although mere failure to report to the F. B. I. when he knew this was desired would hardly warrant an inference of guilt, nearly four months absence from what had been his home, where he had been expected to return the night the F. B. I. looked for him there, could well be found too exaggerated a response to be consistent with innocence. Moreover, even if we were to hold that the hair lay on the other side of the line, the case is one where we could not "determine that such insufficiency could not be supplied upon another trial." Sun B. Lee v. United States, 9 Cir., 1957, 245 F.2d 322, 326. Under these circumstances we deem reversal and remand the appropriate course, 28 U.S.C. § 2106; see Bryan v. United States, 1950, 338 U.S. 552, 560, 70 S.Ct. 317, 94 L.Ed. 335.

▮ One other matter should be noticed. Rule 15(b) of this Court, 28 U.S.C., entitled "Contents of Appendices," requires that:

"The appendix to the main brief of the appellant or petitioner shall contain the judgment, decree, or order appealed from or sought to be reviewed or enforced (excluding the caption and purely formal parts); the opinion, findings of fact and conclusions of law of the court or administrative agency, or the charge of the court if any; and such other parts of the record as are deemed necessary by the appellant or petitioner fairly to present the issues on appeal. * * * The appendix of the appellee or respondent shall set forth any other parts of the record which he thinks similarly necessary. And the appendix to the reply brief shall contain any further parts of the record which the appellant or petitioner thinks have become necessary by the parts printed by the appellee or respondent."

The Court has become aware that some counsel have apparently decided to honor Rule 15(b) in the breach. This case is an example. Although all three appellants argued insufficiency of the evidence, only Lefkowitz's counsel reproduced any of the testimony. Neither his appendix nor that of Dryja's counsel printed the entire charge, as the rule specifically requires. Dryja's brief refers to the evidence without even supplying page references to the transcript. Emond's attorney filed no appendix at all; his brief refers to pages of the transcript not reproduced in Lefkowitz's appendix and invites us to look at certain pages to find errors not specified. The District Attorney's brief makes 131 separate references to testimony; yet, in contrast to his usual practice, no appendix at all was supplied.[3] We have noted similar violations of Rule 15(b) in other cases argued during the first week of the 1960 Term.

Rule 15(b), adopted in an effort to save parties the expense of printing immaterial parts of long records, demands a good-faith effort by counsel to reproduce those parts that are material; and the Court is always willing to entertain applications under Rule 15(a) to present even these in typewritten form where printing would be burdensome. The current failure of many counsel to make such an effort imposes on us a burden of searching through transcripts and of sending for copies of exhibits not in the clerk's file which we ought not and, particularly because of our necessary reliance on distinguished visitors from other circuits, cannot practically assume. It is not our intention to permit Rule 15(b) to be ignored as it now too often is, and we shall feel free to adopt appropriate sanctions for its violation, such as requiring the filing of proper appendices either

---

3. Sixty-two of the 131 references are to testimony printed in Lefkowitz's appendix but the brief failed to provide any cross-references.

before or after argument, disregarding portions of the transcript not reproduced, and, in cases of flagrant breach by appellants, dismissal of the appeal.

Judgments reversed.