Philip N. McABEE, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 16188, 16189.

United States Court of Appeals
District of Columbia Circuit.

Argued May 25, 1961.

Decided June 29, 1961.

Petition for Rehearing en Banc Denied
Aug. 23, 1961.

Circuit Judge Bazelon would grant the
petition.

Mr. Raymond W. Bergan, Washington,
D. C. (appointed by this court), for appellant.

Mr. Harry T. Alexander, Asst. U. S.
Atty., Washington, D. C., for appellee.
Messrs. David C. Acheson, U. S. Atty.
and Carl W. Belcher, Asst. U. S. Atty.
at the time of argument, Washington,
D. C., were on the brief for appellee.
Mr. Oliver Gasch, U. S. Atty., Washington, D. C., at the time the record was
filed, also entered an appearance for appellee.

Before FAHY, DANAHER and BURGER,
Circuit Judges.

PER CURIAM.

These appeals return to this court
again on a remand by the Supreme Court.

The background is important to our reconsideration. Appellant was indicted for housebreakings and larcenies committed on six separate occasions in 1955 and 1956. The last three offenses were committed while he was at liberty on bail awaiting trial for the three earlier offenses.

After conviction on ten of the twelve counts of the indictments, appellant wrote a letter to the Clerk of the District Court asking the Clerk to "forward to me the necessary papers" for an appeal at government expense with court appointed counsel. The forms were sent to him to perfect an appeal but these forms were not returned to the Clerk for filing within the ten day period. The District Court, apparently assuming without deciding that the earlier letter perfected a direct appeal, denied the appeal as frivolous.[1] Various other pro se motions were made by appellant thereafter from time to time and were denied by the District Court. In 1957 he filed a motion to vacate the conviction and this motion was denied. He moved in this court for leave to appeal at government expense and this motion was denied. McAbee v. United States, Misc. No. 888, October 31, 1957. A petition for certiorari was denied by the Supreme Court, 1958, 355 U.S. 964, 78 S.Ct. 554, 2 L.Ed. 2d 539. Later, in 1958, he again moved to vacate his conviction and his appeal from the denial of that motion was denied by this court, McAbee v. United States, 1958, 104 U.S.App.D.C. 278, 261 F.2d 744. Rehearing on this action was sought and denied January 15, 1959. Appellant then filed in this court, Misc. No. 1221, a petition for leave to file a direct appeal and this was denied March 16, 1959. He moved for rehearing of this denial and rehearing was denied April 14, 1959. Appellant again sought relief in the Supreme Court and in that Court the Solicitor General suggested that the case be remanded to this court under Johnson v. United States, 1957, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593, and Ellis v. United States, 1958, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060, to consider whether the appeal had been abandoned, assuming one had been filed. The Supreme Court's action remanding the case to us for such consideration now brings the matter to our attention for the fifth time. 1960, 361 U.S. 537, 80 S.Ct. 615, 4 L.Ed.2d 539.

At this late date, and having in mind the time and effort which has been devoted to this case, it seems to us that a sound solution can be found in examining the merits of appellant's claim as if the appeal had indeed been timely filed and not abandoned.

At this stage appellant urges four grounds for reversal: (a) admission of confessions made prior to preliminary hearing [2] under Rule 5(a); (b) improper consolidation of separate offenses; (c) error in giving adverse missing witness instruction; (d) ineffective assistance of counsel.

■ A careful examination of the record discloses that confessions made as to the first three housebreakings and larcenies were made on Monday morning just before a preliminary hearing in connection with his arrest which had occurred the preceding Saturday night. When confronted by three complaining witnesses, he admitted the acts. Thereafter appellant was released on bail and while at liberty awaiting trial for the first three offenses, he was arrested for the latter three. His second arrest occurred at 6:40 p. m. and he admitted the offenses about 10:30 p. m. As before

---

1. It is argued that the Solicitor General has "conceded" that the earlier letter perfected a direct appeal. This, of course, is to be decided by judges, not resolved by "concessions" or "confessions of error."

2. We note the continuing tendency to describe the preliminary hearing under Rule 5(a) as an "arraignment." *Arraignments* are held *after* indictment under Rule 10, Fed.R.Crim.P., 18 U.S.C.A. See note 2a, Goldsmith v. United States, 107 U.S.App.D.C. 305, 277 F.2d 335, certiorari denied 1960, 364 U.S. 863, 81 S.Ct. 106, 5 L.Ed.2d 86.

when confronted by complaining witnesses who identified stolen property found in appellant's possession, he admitted the housebreakings and thefts in their presence.

Apart from the incriminating statements, the substantive evidence against the appellant was overwhelming. Numerous items of stolen property were found in his possession consisting of miscellaneous items of jewelry, and various items of wearing apparel. When confronted by appellant, one of the complaining witnesses identified as his own the clothing then worn by appellant. Appellant's fingerprints were found on broken window glass at the home of one victim. One complaining witness identified appellant as the man she saw leaving the neighborhood with a suitcase. Before admitting the acts in question, he gave a series of contradictory statements to the police as to how he had acquired the stolen property. When asked about a cigarette lighter, for example, he said he had purchased it in a drug store on Florida Avenue. Asked to explain about the initials of a complaining witness which were on the lighter, he said he just liked those particular initials. As to other stolen items he said he had received them from one Chester Helm, a relative of his.

No objection[3] was made to the admissibility of any of the incriminating statements which, as we have noted, were made not simply to the police officers but directly to complaining witnesses. In the circumstances shown here their admission is not plain error, judicially cognizable under Rule 52(b), Fed.R.Crim.P.

Cf. Johnson v. United States, 110 U.S. App.D.C. ——, 290 F.2d 378.

■ The consolidation of the two sets of charges, that is, the six counts which followed his first arrest and the second group of six counts following his second arrest, was affirmatively agreed to by appellant. Obviously many valid considerations could lead a defendant situated as appellant was with a long criminal record,[4] to prefer consolidation to separate trials; similarly such considerations could well lead experienced counsel to advise such a course of action and it is not the business of appellate judges to indulge in "second guessing" trial counsel. In all events, there having been no objection to consolidation then, appellant cannot be heard to complain of it now. Willis v. United States, 1959, 106 U.S. App.D.C. 211, 271 F.2d 477.

■ The final contention is that it was error for the court to have given a missing witness charge with respect to one "Chester Helm," a relative of appellant, from whom appellant said he purchased some of the stolen property.[5] No objection was made to this charge nor was any request made for a different charge relating to the subject; moreover, this contention must be viewed in the light of the whole record. It must be remembered that appellant was found in possession of a large amount of recently stolen property which had been taken from six different homes. There was testimony in the nature of impeachment that appellant had given a series of conflicting explanations as to how he had acquired the stolen property. The coincidence of having in his possession prop-

3. This trial preceded the decision in Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

4. Appellant's testimony disclosed six prior criminal convictions on various charges.

5. The District Court charged:
    The defendant also says that the property that was found on his person he bought from someone whose name is Chester Helm. However, Chester Helm is not produced and the defendant gives no explanation as to why he didn't call Chester Helm as a witness, if Chester Helm exists. You have a right to infer and the law permits you to do so, if you choose to do it, that if Chester Helm exists and he would be called as a witness, his testimony would have been adverse to the defendant, on the theory that if he exists and would testify favorably, he would have been called by the defendant, unless valid explanation for failure to do so would have been adduced.

erty stolen from six separate homes during the latter part of 1955 and the early part of 1956 placed a heavy burden on appellant. Appellant sought and was allowed a subpoena to produce Chester Helm, the alleged source of the many stolen articles, but Helm could not be found and did not appear.

The law of this jurisdiction is clear that unexplained possession of recently stolen property permits an inference that the possessor is the thief; if this is not rebutted or explained, it is sufficient to support a finding of guilt. Gilbert v. United States, 1954, 94 U.S. App.D.C. 321, 215 F.2d 334; Wright v. United States, 1951, 89 U.S.App.D.C. 70, 189 F.2d 699; Edwards v. United States, 78 U.S.App.D.C. 226, 139 F.2d 365, certiorari denied 1944, 321 U.S. 769, 64 S. Ct. 523, 88 L.Ed. 1064. Accord, United States v. Lefkowitz, 2 Cir., 1960, 284 F.2d 310; Manning v. United States, 10 Cir., 1954, 215 F.2d 945.

Undisputed testimony of six housebreaking victims and the police showed appellant to be the possessor of stolen property from six separate thefts. It was thus the appellant who opened the door to the problem of a missing witness when he sought to rebut the presumptions and inferences flowing from his possession of stolen property by trying to shift responsibility to a relative. Against this background, the evidence that appellant and Chester Helm lived in the same house and appellant's failure to object to the "missing witness" charge we find no error. That charge even if erroneous is not plain error under Rule 52(b). The power vested under that rule is one to be exercised to prevent miscarriage of justice. We have examined the record in the light of the contention that there was ineffective assistance of counsel and we are satisfied that appellant was adequately represented and there is no basis to disturb the verdict on that ground.

The dissenting opinion candidly acknowledges that the evidence of appellant's guilt was strong. But it was more than merely "strong", it was overwhelming. In spite of defense counsel's vigorous efforts to cast doubt on how appellant came into possession of the fruits of six separate housebreakings, the evidence against appellant was never discredited. Indeed appellant's entire testimony was such that the jury might reasonably have concluded that the only truth emanating from him was his admission of numerous prior convictions—which the government could always show from the records if he denied them. Defense counsel's trial tactics including his consent to consolidation of the indictments for trial—no matter what he said—undoubtedly were adopted, not only because of what his client told him, but because, with his long criminal record, the commission of "new" crimes while free on bail on the earlier charges had to be explained in the same way at the same time. In short the appellant's explanation of each of the stolen items, his denials, his alleged "purchase" of a ring and watch simply were unbelievable.

This case has engaged the time and attention of the courts for more than five years but at any stage even the most cursory examination of the evidence would show conclusively that this is not a case where any injustice has resulted. It is to be hoped that this detailed examination into the merits of the contentions raised by appellant is adequate to put the stamp of finality on convictions which were established by overwhelming evidence of guilt so long ago.

Affirmed.

FAHY, Circuit Judge (dissenting).

As appears from the history of appellant's efforts to obtain review of his convictions, set forth in the court's opinion, the merits are now reviewed for the first time. Accordingly, the time which has elapsed without such review, which defendant has continuously sought, cannot fairly be attributed to him. He promptly sought relief after his convictions and has persisted ever since in the effort. On the present remand to us by the Supreme Court I am of the view that we have jurisdiction to consider the judg-

ments of conviction as on direct appeal, and agree with the court that we should examine the merits.

The evidence of guilt in some respects was so strong that it is with some reluctance that I dissent from the affirmance of the convictions. Nevertheless, the defendant has consistently maintained his innocence and it is possible that he was not the guilty party in some of the numerous instances of housebreaking and larceny charged to him. Be that as it may, the trial was of a character which I am unable to approve as a basis for the convictions. I do not suggest that the accused should be acquitted or the charges against him dismissed. I think, rather, that he is entitled to a new trial for the reasons now to be stated.

(1) The two indictments, each containing several counts charging separate housebreakings and larcenies at widely separated dates, were consolidated for trial. The trial judge asked the defendant's appointed counsel if he had any objection to consolidation. He answered, "I can see no good that can be served for lack of consolidation, because there is a general denial of guilt as to all counts. It would seem to me in the interest of time that the cases might be consolidated." The "reasons" for not objecting to consolidation were thus made clear. We are not left to speculate that some trial tactic, deemed helpful to the accused, was a reason. The reasons are stated and are two: First, "there is a general denial of guilt as to all counts." This is no reason whatever for consolidation, for there would be no trial at all of any count of which guilt was not denied. Second, consolidation would be "in the interest of time." The question for defense counsel was not the "interest of time" but the interest of the defendant.

(2) Defendant was taken into custody at 8 a. m. on December 17, 1955. He was not given a preliminary hearing until forty-eight hours later, the morning of Monday, December 19. During the intervening period he made several incriminating statements to the investigating officers. These statements were admitted in evidence without objection. They appear to have been clearly inadmissible under the McNabb-Upshaw-Mallory exclusionary rule of evidence. No conceivable reason is advanced why objection was not lodged by counsel to this highly prejudicial evidence so that at least its admissibility could be determined. Indeed, when the statements were first introduced at the trial defendant himself asked to address the court. He protested to the judge, having been given the right to do so out of the presence of the jury, that he "wanted someone here to protect my rights for me. I don't have it." This appeal for help was answered by reassurances of the court. A reading of the transcript of the trial convinces me these reassurances were not realized.

(3) The court on its own motion gave the jury what is known as the "missing witness" instruction. Defendant had testified in his own defense. He said he had obtained some items found in his possession from a man named Chester Helm in a dice game. There was some evidence Helm was a relative and could be found at defendant's address. The defense had issued a subpoena for Helm, which the Marshal had returned with the notation he was unable to locate Helm. The Marshal noted on the subpoena that the people at the given address had been evicted some time before and their whereabouts were unknown. In this situation the court instructed the jury as follows:

"The defendant also says that the property that was found on his person he bought from someone whose name is Chester Helm. However, Chester Helm is not produced and the defendant gives no explanation as to why he didn't call Chester Helm as a witness, if Chester Helm exists. You have a right to infer and the law permits you to do so, if you choose to do it, that if Chester Helm exists and he would be called as a witness, his testimony would have been ad-

verse to the defendant, on the theory that if he exists and would testify favorably, he would have been called by the defendant, unless some valid explanation for failure to do so would have been adduced."

Aside from the fact of the issuance of a subpoena for Helm, which was called to the court's attention when the instruction had been given, and the fact that there was no showing Helm was more available to defendant than to the government, the instruction had no proper place in the case, and was prejudicial to defendant. This "missing witness" instruction was given on the basis of defendant's testimony about Helm; that is, Helm's possible presence as a witness came into the case solely on the basis of defendant's testimony implicating Helm in a serious criminal matter. In such a situation the "missing witness" instruction is not in order. As Wigmore states: "[T]he inference [that the testimony would be unfavorable] is clearly not a proper one where the person in question is one who by his position would likely be so prejudiced against the party that the latter could not expect to obtain from him the unbiassed truth." II Wigmore, Evidence § 287 (3d ed. 1940.) It may well be that had Helm been called as a witness he would have testified unfavorably to defendant, but in the circumstances of this case an inference that he would do so does not arise from the defendant's failure to call him, as the court instructed the jury, but from the fact that he would be implicating himself if he testified favorably to defendant.

The absence of objections in the context of this trial serves to emphasize rather than to alleviate the failure of the trial to meet the requisite standard of fairness. Moreover, Fed.R.Crim.P. 52 (b), which has the force of law and has often been applied by this and other federal courts, provides:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."