**UNITED STATES of America,**
**Appellee,**

v.

**Ralph GARGUILO and Joseph Macchia,**
**Defendant-Appellants.**

**No. 37, Docket 27516.**

United States Court of Appeals
Second Circuit.

Argued Oct. 2, 1962.

Decided Oct. 24, 1962.

Lumbard, Chief Judge, dissented in part.

Harry H. Voigt, New York City, for appellant Ralph Garguilo.

Anthony G. Greco, Brooklyn, N. Y., for appellant Joseph Macchia.

Donald J. Cohn, New York City (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Andrew T. McEvoy, Jr., Asst. U. S. Atty., of counsel), for the United States.

Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge.

Ralph Garguilo and Joseph Macchia appeal from judgments of the District Court for the Southern District of New York, convicting them after a verdict under a single count indictment which charged the making of a likeness of a $10 bill in violation of 18 U.S.C. § 474. Because of a serious question raised by Macchia as to the sufficiency of the evidence against him, it is necessary to recount the testimony in some detail.

The Government's principal witnesses were Mario Villari, owner of Graphic Printing Company, a co-defendant who pleaded guilty, and Albert Della Monica, a photographer and long-time friend of the Garguilo family, whose innocence was not questioned. Villari first met

Garguilo in Magistrate's Court on August 17, 1960, while both were waiting to pay traffic fines; Villari told Garguilo he was in the printing business and gave Garguilo his card. About a month later Garguilo came to Villari's shop on West 53rd Street in Manhattan. Joseph Macchia was with him. According to Villari, Garguilo introduced Macchia as "Tony", saying "that he is buddy-buddy, that they do everything together as a group." Garguilo took Villari "on the side", approximately 25 feet away from Macchia, and, placing his arm around Villari's shoulder, asked Villari to join him in a counterfeiting endeavor; Villari said he was not interested and the two visitors left about ten minutes after they had arrived. There is no evidence that Macchia talked about counterfeiting or anything else.

Sometime during the summer of 1961, Garguilo came to Della Monica's photography studio in Brooklyn and asked to be taught how to develop a picture and make a copy. He came "several times," "about a week or so". He had Macchia with him "only once or two" of these times. Garguilo introduced Macchia to Della Monica as "my friend, Joe". After Garguilo had learned how to develop pictures, he "started to practice himself" and apparently did so regularly at Della Monica's studio; Macchia was there "two or three times" in all, never alone but always with Garguilo. Garguilo borrowed a camera and other photographic equipment from Della Monica, explaining that he was going into the advertising business and needed the camera to make copies. Inquiries by Della Monica as to Garguilo's progress produced no satisfactory response. There was no evidence that Macchia witnessed the loan of the equipment or participated in its use.

In July, 1961, Garguilo returned to Villari's printing shop. The record is not altogether plain whether there were two or three visits during July, but it is clear that Garguilo was alone on each of them. Assuming that there were three,

the first was devoted to a general request for help, which Villari declined, as he had a year before; on the second, Garguilo asked Villari to check his negatives of $10 bills, which Villari again refused to do; on the third, Villari "succumbed", looked at the negatives, which Garguilo carried in a newspaper, through a "view box" and pronounced them too dark, whereupon Garguilo destroyed them.

Garguilo again came to Villari's shop in early August, 1961. This time Macchia accompanied him. Garguilo had brought some more negatives which Villari viewed and found "pretty good"— good enough so that he "burnt in" a plate. This was done with Macchia two or three feet away, "very close". The plate being blurred and inadequate, Garguilo erased it, whereupon he and Macchia "went away. They took the negatives with them and went away." Who carried the negatives is not clear. Villari testified this was the last he saw of Macchia.

Garguilo came to Villari's shop a few days later with some more negatives. Again a plate was "burnt in", found inadequate, and destroyed.

One of Garguilo's visits to the printing shop was witnessed by Secret Service Agent Motto. He testified that on August 11, 1961, he saw Garguilo and another man drive up in an automobile. Garguilo got out, carrying a newspaper wrapped tightly under his arm, and went into the building where Villari's shop was located. He remained for approximately one hour. Then he and Villari came out, got in the car in which the other man was seated, and drove off. Motto could not identify the man who stayed in the car; he did estimate the man's age, height and weight, but there is nothing to tell whether these estimates bear any correspondence with Macchia or whether the unidentified man was the driver. Toward the end of August, Secret Service Agents searched Villari's shop and found the erased plate of early August, which bore Garguilo's fingerprints.

The only other evidence against Macchia was that, when brought before an Assistant United States Attorney for questioning, he admitted that he knew Garguilo, that on several occasions he accompanied Garguilo to the photographer in Brooklyn, and that several times he went to a printing place with him. He claimed, however, "that he never went up to the printer's establishment but merely sat on the stoop." Macchia also admitted that he knew what was in the newspaper taken out of the car by Garguilo, but refused to say what this was.

Garguilo's sole claim on appeal relates to one item in the charge. Neither defendant had taken the stand. Their counsel had not requested the judge to instruct the jury that no inference against them was to be drawn from this. See 18 U.S.C. § 3481; Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939). Neither had counsel requested that no instruction on the subject be given. The judge *sua sponte* included the following in his charge:

> "The defendants have remained silent, they have not taken the stand, and I charge you that under our law it is their constitutional right to remain silent and that that fact must not be considered by you in any way whatever. You must not even refer to it during your deliberations.

> "As I told you at the outset of my charge it is the government's duty to prove the defendants, each defendant, guilty beyond a reasonable doubt, and the burden of proof rests upon the government at all stages of the trial. It never shifts to the defendants. The defendants are presumed to be innocent as I have already told you, and they had a right to remain silent, and you must not draw any inferences from the fact that they have remained silent and you must not allude to it in any way during your jury deliberations."

Not disputing that an instruction on the subject could hardly have been better phrased, assigned counsel for Garguilo argues that it is error for the judge to give any instruction unless requested by the defendant to do so, since there is a risk that, the failure to testify being thus spotlighted, the light will penetrate the curtain sought to be drawn over it.

█ There may be enough in this so that, as Judge Learned Hand said for this Court many years ago, "It is no doubt better if a defendant requests no charge upon the subject, for the trial judge to say nothing about it * * *." Becher v. United States, 5 F.2d 45, 49 (2 Cir.1924), cert. denied, 267 U.S. 602, 45 S.Ct. 462, 69 L.Ed. 808 (1925). But we agree also with the rest of Judge Hand's statement: "but to say that when he does, it is error, carries the doctrine of self-incrimination to an absurdity." See also United States v. Tannuzzo, 174 F.2d 177 (2 Cir.), cert. denied, 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493 (1949); United States v. Piscitello, 231 F.2d 443 (2 Cir.), cert. denied, 352 U.S. 857, 77 S.Ct. 89, 1 L.Ed.2d 68 (1956). It is far from clear that such an instruction is prejudicial to a defendant; the chances are rather that it is helpful. The jurors have observed the defendant's failure to take the stand; in the absence of instruction, nothing could be more natural than for them to draw an adverse inference from the lack of testimony by the very person who should know the facts best. And "despite the vast accumulation of psychological data, we have not yet attained that certitude about the human mind which would justify * * * a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court that the failure of an accused to be a witness in his own cause 'shall not create any presumption against him.'" Bruno v. United States, supra, 308 U.S. at 294, 60 S.Ct. at 200.

█ Macchia claims that the evidence was insufficient to warrant submission to the jury of the case against him as an aider or abettor. Insofar as his claim relates to alleged lack of knowledge of

the crime in which Garguilo was engaged, it is baseless—an inference of such knowledge would be not only permissible but virtually inescapable if the jury credited the testimony that Macchia was "very close" to Garguilo and Villari when the telltale plate was made, and that Macchia had admitted knowing what was in the newspaper that Garguilo had removed from the car. But knowledge that a crime is being committed, even when coupled with presence at the scene, is generally not enough to constitute aiding and abetting. In Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949), the Supreme Court said, quoting Judge Learned Hand in United States v. Peoni, 100 F.2d 401, 402 (2 Cir.1938):

> "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' "

See also Morei v. United States, 127 F.2d 827, 831 (6 Cir.1942).

 It is true, as the Government urges, that evidence of an act of relatively slight moment may warrant a jury's finding participation in a crime. Thus it would have been enough here if the Government adduced evidence from which the jury could find, in addition to guilty knowledge, that Macchia had carried the negatives or driven the car. See Simon v. United States, 78 F.2d 454, 455–456 (6 Cir.1935). Perhaps the evidence is, in fact, susceptible of exactly such a construction. Villari testified that on the first unsuccessful plate burning "They took the negatives with them and went away." And Motto's testimony, coupled with the evidence as to Macchia's admission of knowing what was in the paper that Garguilo took out of the car, would be consistent with Macchia's having been the driver on August 11, although if this was Garguilo's final visit, a finding of Macchia's presence on that occasion would run counter to Villari's testimony that the penultimate visit was the last time he saw Macchia. It is true also that participation may be proved by circumstantial evidence, as in United States v. Lefkowitz, 284 F.2d 310, 315–316 (2 Cir.1960), where we held that defendant Dryja's fingerprints on stolen cartons, together with evidence tending to negate the possibility of his having had access to them at the point of origin, permitted an inference that he had handled them after the theft, and, since other evidence tended to show guilty knowledge, that submission to the jury was proper. There may even be instances where the mere presence of a defendant at the scene of a crime he knows is being committed will permit a jury to be convinced beyond a reasonable doubt that the defendant sought "by his action to make it succeed"—for example, the attendance of a 250-pound bruiser at a shakedown as a companion to the extortionist, or the maintenance at the scene of crime of someone useful as a lookout. See Veney v. State, 225 Md. 237, 170 A.2d 171 (1961). Here presence in the car on August 11 might be thought to have been for the latter purpose. Again, it is enough if the presence of the alleged aider and abettor has stimulated others to help the perpetrator, as, for example, if Macchia rather than Garguilo had been the friend of Della Monica, or perhaps simply on the sole basis that it is proved to have positively encouraged the perpetrator himself, see State v. Hargett, 255 N.C. 412, 415, 121 S.E. 2d 589, 592 (1961) (dictum). Yet, even in an age when solitude is so detested and "togetherness" so valued, a jury could hardly be permitted to find that the mere furnishing of company to a person engaged in crime renders the companion an aider or abettor. Here, on every occasion that was the subject of testimony, Garguilo was the actor, often he was alone, and when he first propositioned Villari, he left Macchia to one side; any inference that Macchia had some role beyond that of a companion rested on the

rather equivocal evidence just discussed and on the repetitive instances of his presence, cf. United States v. Monica, 295 F.2d 400, 402 (2 Cir.1961), cert. denied, 368 U.S. 953, 82 S.Ct. 395, 7 L. Ed.2d 386 (1962), all colored by Garguilo's unusual introduction of Macchia to Villari on their first visit to the print shop.

■■ If the evidence against Macchia passed the test of sufficiency applicable in a criminal case, it did so, as was said in United States v. Lefkowitz, supra, 284 F.2d at 315, "only by a hair's breadth". We are not here required to make so fine a judgment, since we believe reversal for a new trial to be called for in any event. If the evidence was insufficient it came near enough to the line to entitle the Government, if it desires, to an opportunity to put it across on a new trial. Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950); Sun B. Lee v. United States, 245 F.2d 322, 326 (9 Cir.1957); United States v. Lefkowitz, supra, 284 F.2d at 316. On the other hand, we would still be disposed to direct a new trial even though the evidence was sufficient. The closeness of the issue against Macchia imposed an obligation on the trial judge to instruct the jury with extreme precision, as he realized, and on us to review the charge with what, in a less doubtful case, would be undue meticulousness. See Glasser v. United States, 315 U.S. 60, 67, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Persico, 305 F.2d 534, 536 (2 Cir.1962). Reading the entire charge, we cannot overcome a fear that the judge, quite unwittingly and simply by emphasis, may have led the jury to believe that a finding of presence and knowledge on the part of Macchia was enough for conviction. True, there is much in the charge that would argue against this. Turning to the case against Macchia, the judge began by stating the law as to aiding and abetting with entire correctness. However, when he came to apply these principles to the facts, very nearly the whole of his comment, and a vivid illustration that he used, related solely to the issue of "conscious, intelligent awareness of what was going on." [1] The jury evidenced its concern over the case against Macchia by a request for further instructions as to what constituted aiding or abetting; although what the judge said would have been adequate, indeed excellent, in the usual trial, the contrasting hypothetical cases which he put to the jury turned on the issue of knowledge,[2] whereas his instructions with respect to purposive participation, although correct, were rather abstract. Never were the jurors told in plain words that mere presence and guilty knowledge on the part of Macchia would not suffice unless they were also convinced beyond a reasonable doubt that Macchia was doing something to forward the crime—that he was a participant rather than merely a knowing spectator. In the usual case we should not think of finding reversible error in such a charge when there was no objection, or perhaps even if there had been. However, in the exceptional circumstanc-

1. The judge stated:
"Now let us take it from there, making those basic assumptions [that the jury believed Villari and Della Monica]. Was Mecchia [sic] close enough to the transactions, to the conversations, to the general atmosphere of the transactions to know what was going on? Did he have an intelligent, conscious awareness of what was going on? And if he did have that conscious intelligent awareness of what was going on, was it sufficient to constitute an aiding or abetting within the terms of the definition I gave you?"
He then gave as an illustration the case of a man in the back seat of a car "who was fast asleep and all rolled up in a rug or with his overcoat over his head," who, even though introduced by the principal defendant as "my pal, my partner, and my co-conspirator," would not be an aider or abettor.

2. These cases concerned a taxi driver who drove a narcotics smuggler to an illegal appointment with special celerity and made a telephone call for him, without knowing that he was dealing with a narcotics smuggler, and another who performed the same acts with knowledge of the illegality of the venture.

es here presented, and in the light of our powers under 28 U.S.C. § 2106 and F.R. Crim.Proc. 52(b), we believe that the interests of justice as between the Government and Macchia will be best served by reversal and remand for a new trial.

The Court expresses its appreciation to Harry H. Voigt, Esq., assigned counsel, for his effective brief and argument on behalf of Garguilo.

The judgment of conviction of Garguilo is affirmed; that of Macchia is reversed and remanded for a new trial.

LUMBARD, Chief Judge (concurring and dissenting).

As I believe that the jury may well have thought that knowledge by Macchia of what was afoot was sufficient to convict, I concur in the result which permits a retrial of the case against him. But I disagree with my brethren insofar as Judge FRIENDLY'S opinion implies that there was not enough evidence from which the jury could conclude that Macchia was guilty as an aider and abettor in the sense of wishing to see Garguilo succeed and assisting him by his actions. I think there was sufficient evidence to support a verdict of guilty upon a proper charge from the court.

There can be little doubt that when Macchia, together with Garguilo, visited Villari at his printing shop at 537 West 53rd Street, Manhattan, and Della Monica at his photography shop on New Utrecht Avenue in Brooklyn, they must have thought that Macchia was interested in Garguilo's business. Each of them saw him at least twice. The presence of a friend is not only an encouragement to the one who is accompanied but it may also be of assistance in persuading others to be of help. From these four or five visits which Macchia made with Garguilo to the business places of Villari and Della Monica, and from all the surrounding circumstances, and the admissions of Macchia, it seems to me that it was a question for the jury as to whether Macchia's accompanying Garguilo did not contribute to the likelihood of the success of Garguilo's efforts.

In Hicks v. United States, 150 U.S. 442, 450, 14 S.Ct. 144, 37 L.Ed. 1137 (1893), the Supreme Court recognized that presence without action may constitute aiding and abetting if there is evidence that the defendant had a purpose to aid but did not act only because action proved to be unnecessary and it is shown that the presence was pursuant to an understanding. Here there was enough evidence for the jury to infer that Macchia was going along to be of help. There was also enough evidence to infer an agreement between Macchia and Garguilo to commit the counterfeiting offense. In short, there was evidence of purpose and conspiracy which, if the jury had been properly charged, would require an affirmance.

As Judge FRIENDLY says, if Macchia had said one single word of encouragement to Villari or Della Monica, it would have been enough. I think the jury could construe his mere presence on these occasions as tantamount to such encouragement. It seems to me naive to suppose that the kind of company and moral (or immoral) support which Macchia gave to Garguilo by being with him was not of the kind which would help Garguilo in his business with Villari and Della Monica. While there is nothing to show that Macchia might have been a hoodlum or bodyguard, his presence certainly rendered it less likely that Villari or Della Monica might report the matter to the police. Moreover, Macchia's presence gave Garguilo an ally and at least a possible witness if any dispute had arisen. It is precisely because two persons together are more formidable that two persons acting separately in carrying out any illegal design that conspiracy has been made a crime even though it may not succeed.

In my opinion there was enough evidence to permit the jury to decide on a proper charge whether or not Macchia was guilty as an aider and abettor.