242 P.2d 546

**CITY OF PHOENIX et al. v. PENSINGER.**
**No. 5405.**

Supreme Court of Arizona.
March 31, 1952.

Jack Choisser, City Atty., Laurence H. Whitlow, Asst. City Atty., and Jack D. H. Hays, Asst. City Atty., all of Phoenix (Wm. C. Eliot, Phoenix, of counsel), for appellants.

Jack C. Cavness, of Phoenix, for appellee.

STANFORD, Justice.

C. W. Pensinger, appellee, the present City Magistrate of the City of Phoenix, brought this action for a declaratory judgment in the lower court to test the validity and constitutionality of an amendment to the charter of the City of Phoenix. The amendment, which we now set forth in part purports to set up certain qualifications for the office of City Magistrate, provides for the manner of selection, appointment and removal, and establishes a definite term of office and minimum salary limitations.

"There shall be at least one (1) City Magistrate, who shall be judge of the City Court. He shall be appointed for a term of four (4) years beginning on the first business day of July, 1950, and may be removed only upon resolution adopted by a unanimous vote of all members of the council after public hearing and for cause. The City

Manager shall make the appointment from a list submitted to him by a majority of the judges of the Superior Court of Maricopa County, State of Arizona, of three (3) duly licensed and practicing attorneys at law who are residents of the City of Phoenix. If for any reason such a list be not submitted to the City Manager at least ten (10) days before the beginning of any term of office or within ten (10) days after a vacancy shall occur in the office, the City Manager shall proceed, notwithstanding the absence of such list, to appoint a person so qualified. The City Magistrate shall devote his full time to the duties of his office and shall receive a salary to be fixed by ordinance of not less than five thousand dollars ($5,000.00) per year, payable in semi-monthly installments. The salary so fixed by ordinance shall not be changed during a term of office.

\*     \*     \*     \*     \*     \*

"Provided, however that in the event of temporary absence, sickness, or other inability of the City Magistrate to act, the City Manager may, without the necessity of a list being submitted, appoint a person qualified as above provided as acting City Magistrate, who shall for such period of inability perform all the functions and duties of, and receive the same salary as the City Magistrate." Chapter VIII, Sec. 3, Charter of the City of Phoenix.

The lower court held the amendment to be unconstitutional and invalid in its entirety. This appeal followed.

The objectionable part of the amendment is that which imposes a duty upon the judges of the Superior Court of Maricopa County to submit a list of 3 duly licensed and practicing attorneys of the City of Phoenix to the City Manager, from which he would make his selection. Art. VI, Sec. 11, of the Constitution of Arizona states: "Judges of the Supreme Court and judges of the superior courts shall not be eligible to any office or public employment other than a judicial office or employment, during the term for which they shall have been elected." The charter amendment attempts to make a majority of the judges of the Superior Court of Maricopa County a nominating board for candidates for appointment to the office of City Magistrate of the City of Phoenix. This proposed duty cannot be imposed upon them nor could they in their official capacity perform the duty. It clearly appears that the questioned provision of the amendment is in direct conflict with the above quoted constitutional clause. Appellants' one assignment of error does not take issue with the finding that the amendment is unconstitutional as it pertains to action by the judges of the Superior Court of Maricopa County, but does question the finding that the amendment is invalid and void in its entirety. Appellants, however, do contend the amendment may be a valid and constitutional enactment with the unconstitutional portion stricken out.

There is little or no disagreement as to the law in this matter. The disagreement lies in its application to our particular situa-

422

tion. We quote from Cooley's Constitutional Limitations, Vol. I, 8th Ed., page 362: " * * * If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of the rule."

Perhaps the most difficult problem to analyze is that of the intention of the voters in passing this amendment. This amendment was voted upon and passed by the electors of the City of Phoenix at a special election called for the purpose. We feel the logic and reasoning as expressed in Judge Kelly's Statement of Decision correctly and ably disposes of appellants' contention and from it we quote:

"The entire spirit of the amendment is the improvement in public service rendered by the magistrate's court, to be effected by a wise, guided, and discreet selection of the appointee. It is patent that mere membership of the Bar, of itself, adds but little to any man's stature as the potential holder of the magistrate's office. It is fully as evident that if a majority of the very sound, learned and honorable members of the Maricopa County Superior Court Bench, men all of wisdom and discernment, and above all familiar with and experienced in the appraisement of the members of their Bar join in the recommendation of a list of eligibles the nominee could hardly fail to measure up to expectations.

"It will be noted that the Amendment provides a salary reasonably commensurate with the importance of the office, and for what in effect is a term tenure. Whether the legislative body, which in this instance was the people themselves in their collective sovereignty would have enacted the remaining portion of the amendment without the unconstitutional part of it cannot be known; but as a voter I should feel that chicane had been practiced upon me if I had voted for a certain qualification of a candidate to find that instead some Tom, Dick or Harry had been foisted upon me to whom I would be unwilling to give a fixed tenure at an increased salary in an important office.

"It may be noted that it was the clear intent of this legislation to require the appointee to the City Magistracy to be a licensed and practicing attorney, a requirement inextricably bound up in the invalid method of providing for his selection. Unless reference be made to the invalid provision there is no chart, guide or direction as to what qualifications the officer must possess, and thus the very heart of the Amendment as it appears to me, is excised from it leaving nothing but the fixing of the salary and the term. If such reference to what for its invalidity cannot remain as a part of the enactment is allowable it appears only by construction and not by express language what the qualification of the appointee must be, to the confusion of the

electors voting upon the Amendment. The 'qualifications' as submitted to them at the election comprehended 'approved by the judges,' and not mere attorneyship, upon which they did not vote.

"In view of these considerations it appears that the subject of the qualifications of the magistrate is of the very essence, core, and spirit of the Amendment and so intimately a part of it as to bring upon it in its entirety the ban of the rule as laid down by Cooley, more particularly in view of the further rule that the presumption is that the Act is meant to have been effective as a whole and not item by item."

Judgment affirmed.

UDALL, C. J., and PHELPS, DE CONCINI and LA·PRADE, JJ., concur.