420 P.2d 185

**STATE of Arizona, Appellee,**

v.

**Arthur W. COUSINS, Appellant.\***

**No. I CA–CR 93.**

Court of Appeals of Arizona.

Nov. 17, 1966.

Rehearing Denied Dec. 28, 1966.

See 4 Ariz.App. 468, 421 P.2d 901.

to this Court pursuant to Section 12–120.23 A.R.S.

Hughes & Hughes, by Coit I. Hughes, Phoenix, for appellant.

Darrell F. Smith, Atty. Gen., by Gary K. Nelson, Asst. Atty. Gen., for appellee.

STEVENS, Chief Judge.

The defendant was charged with four counts of perjury. He was tried by a jury which returned a verdict of guilty as to each count. After the judgment of guilt and sentence, the defendant appealed to this Court. He invoked the proper procedures and was released on bond pending appeal.

Count I of the information charges as follows:

"The said Arthur W. Cousins on or about the 30th day of March 1965, and before the filing of this information at and in the County of Maricopa, State of Arizona, did then and there, after being duly sworn to tell the truth as a witness at a trial under Cause No. 45631 before the Superior Court in and for the County of Maricopa, committed perjury by testifying 'No' in answer to the question 'Isn't it a fact that you left the Four Fourteen Club with Mrs. Santillanes and went to the Little Seven?', when in fact, said Arthur Cousins knew that the foregoing testimony was at the time he so testified false and untrue; contrary to Section 13–561, 13–565 and 13–572, A.R.S., as amended, 1956."

Counts II, III and IV are in relation to his testimony at the same trial and recite his negative answers to the following questions:

"COUNT II: * * * 'Isn't it true you were driving this vehicle with Mrs. Santillanes in the car along West Roosevelt heading east at approximately 32nd Avenue and struck a parked car?' * * *"
"COUNT III: *. * * 'Isn't it a fact that you then attempted to run from this scene of this accident?' * * *"

"COUNT IV: 'Isn't it a fact that you attempted to have Mrs. Santillanes run with you but she was injured and you ran away, yourself?' * * *"

An examination of the official record of the trial of the perjury charges persuades this Court that the presentation of the evidence by the Deputy County Attorney leaves something to be desired. We approve of the manner of proof recited in the opinion on page 533 of the Arizona Appeals Reports of State v. Nobel, 2 Ariz. App. 532, 410 P.2d 489 (1966). We do not hold that there may not be other acceptable methods of proof.

## STATUTES

In 1953 Arizona amended its statutes relative to the offense of perjury. The Legislative Act was based substantially on the Model Act on Perjury found in Volume 9 of the Uniform Laws, Annotated. This Act is now set forth in the Arizona Revised Statutes as Sections 13–561 to 13–572.

Prior to the 1953 amendment, the statutory provisions defining perjury contained the requirement of the materiality of the statement as an essential element of the offense. The following quotations are taken from the Arizona Revised Statutes:

§ 13–561. (In part)

"Perjury by single statement

A. A person, who in a trial * * * in which making * * * a statement is * * * authorized by law, makes * * * a material statement under oath, * * * that the statement is true, when in fact the witness or declarant does not believe that the statement is true or knows that it is not true, or intends thereby to avoid or obstruct the ascertainment of the truth, is guilty of perjury."

"§ 13–565. Proof of materiality of statement.

The question whether a statement was material shall include only whether the

statement might affect some phase or detail of the trial, hearing, investigation, deposition, certification or declaration, and is a question of law to be determined by the court."

"§ 13–566. Proof of guilt

Proof of guilt beyond a reasonable doubt is sufficient for conviction for perjury or subornation of perjury and it shall not be necessary also that proof be made by a particular number of witnesses or by documentary or other type of evidence."

§ 13–568 (In part)

"Defenses

A. Upon accusation of a charge of perjury by single statement, as defined in § 13–561, it is a defense that the statement is true. * * *"

§ 13–569 (In part)

"Limitation of defenses

It is no defense to a prosecution for perjury that: * * *

"4. The accused did not know the materiality of the false statement made by him or that it did not, in fact, affect the proceeding in or for which it was made."

§ 13–572 (In part)

"Punishment * * *

A. A person who is convicted of any offense defined in this article shall be punished by a fine of not less than five hundred nor more than five thousand dollars, imprisonment in the state prison for not less than one nor more than fourteen years, or both. * * *"

■ The Uniform Act and the form recommended for passage omit the reference to materiality which is found in Arizona's Section 13–561. Arizona retained materiality as an essential element of the offense. The case of State v. Krug, 96 Ariz. 225, 393 P.2d 916 (1964), is a perjury case based upon the present Arizona Law although a different section than the one involved in the case before us. In the opinion on page 227 of the Arizona

Reports, on page 917 of 393 P.2d the Supreme Court pointed out that the State must prove the essential elements of the offense beyond a reasonable doubt, one of them being "that the defendant made material statements". It is our opinion that the following language contained in Section 13–565, relating to materiality, "and is a question of law to be determined by the court", is severable under the tests set forth in City of Phoenix v. Pensinger, 73 Ariz. 420, 242 P.2d 546 (1952), and State v. Farrell, 1 Ariz.App. 112, 399 P.2d 915 (1965), and that this statutory language does not affect the sound rule set forth in Krug.

## THE RECORD BEFORE US

Herein we refer to the trial of cause number 45631 as the traffic offense trial and to the trial of the cause now under consideration as the perjury trial.

In the presentation of the State's case in chief, five witnesses, including Mona Santillanes, were called to establish the date of the collision. Each witness was asked a leading question as to the date. Each leading question referred to the 4th and 5th of November 1964. All acknowledged these to be the correct dates. Mona Santillanes, who was the passenger in the defendant's car and his companion that evening, traced the events of the 4th and 5th of November from the Meadow Inn to the Four Fourteen Club to the Little Seven to the collision in the vicinity of the intersection of West Roosevelt and 32nd Avenue and to the stopping and abandonment of the car by the defendant at 318 North 32nd Avenue. (The Meadow Inn is located in the vicinity of Southern Avenue, which is the boundary of the 6000 block South, and 39th Avenue, which is the boundary of the 3900 block West. The Four Fourteen Club is located at 414 North 35th Avenue, North 35th Avenue being Easterly from 39th Avenue. The Little Seven is located at 916 North 35th Avenue. West Roosevelt is the boundary of the 1000 block North. 318 North 32nd Avenue is approximately six blocks South of the point of the collision.) She

testified as to the fact of drinking by the defendant. She testified that, at the scene of the collision, the defendant asked her where she wanted to go and that she replied that she wanted to go home. She described the defendant's driving of the disabled car from the scene of the collision to 318 North 32nd Avenue. It was not until after the defendant and Mona Santillanes stopped near 318 North 32nd Avenue that the defendant suggested to her that they both leave the car. She was severely injured and could not depart on her own two feet. Relative to departing from the then parked car we have the following questions and answers:

"Q. And he said, 'Let's get out and run'?

"A. He didn't say, 'Let's get out and run'.

"Q. What did he say?

"A. He said, 'We have got to get out of here.' "

An additional witness testified that he observed the defendant walking (not running) away from the car at its parked location at 318 North 32nd Avenue.

The official court reporter who attended the traffic offense trial was called as a witness for the State. She acknowledged that she was the court reporter on 30 March 1965, and in relation thereto we find an affirmative answer to the following question:

"Q. And did you have occasion to be the court reporter for the trial for leaving the scene of the accident one Arthur Cousins?"

She identified the official court personnel who were present including Judge Thurston. State's Exhibits I and II were marked for identification in the perjury trial. The court reporter identified Exhibit I as a transcript of the defendant's testimony at the 30 March 1965 trial. The transcript bore the reporter's certificate dated 30 March 1965. This would indicate to the Court that the court reporter was requested to transcribe the testimony immediately fol-

lowing the conclusion of the trial. There was also shown to the court reporter Exhibit II which appears to be a carbon copy of a transcript of the testimony of all of the witnesses at the 30 March 1965 trial. Exhibit II bears a form of certificate with the date of 3 June 1965. The certificate attached to the Exhibit was not executed by the court reporter. Exhibit II does not contain a statement of the offenses on trial; it does not contain any motions or rulings at the close of the State's case; and it does not contain the ultimate decision of the trial judge. We must assume that whoever ordered Exhibit II requested that the transcript be limited to the testimony of the witnesses. Exhibit II contains the same testimony found in Exhibit I.

The court reporter testified that Exhibit I was an accurate transcript of the testimony of the defendant and that Exhibit II was an accurate transcript of the testimony of all of the witnesses. After the State offered Exhibit I in evidence, and before the court ruled on the offer, the defense asked questions on voir dire examination. The questions asked on voir dire are not as well phrased as they could have been. The clear import of the questions and answers is that the court reporter did not personally transcribe her notes and that the two Exhibits were typed by a transcriber. On redirect examination the court reporter testified as follows:

"Q. Did you have an opportunity to compare the transcript with your notes?

"A. I spot checked it, not all the way through.

"Q. How about the testimony of Arthur Cousins?

"A. The same.

"Q. Spot check?

"A. I spot checked it."

The defense presented a timely objection, which was overruled, and Exhibit I was received in evidence. This was error. The transcript did not meet the test set forth in Kinsey v. State, 49 Ariz. 201, 65

P.2d 1141, 125 A.L.R. 3 (1937). In Kinsey on page 222 of the Arizona Reports, on page 1151 of 65 P.2d, The Arizona Supreme Court approved the use of the reporter's transcript of the testimony, " * * * if the witness testified that the transcript was a true and accurate transcript of the original notes." Mere spot checking does not meet this standard. There was an absence of proper foundational questioning of the court reporter with reference to the crucial questions which are set forth in the four counts of the information. Exhibit II was offered in evidence; the defendant's objection was properly sustained.

The Assistant City Attorney, who prosecuted the traffic offense trial, was the State's final witness on its case in chief. On direct examination he testified that, on 30 March 1965, he was prosecuting the defendant " * * * for leaving the scene of an accident and also for driving under the influence of liquor." On oral argument of the appeal, though not a matter which is reflected in the record, we were informed that after the State rested in the traffic offense trial and before the defendant took the witness stand the trial judge dismissed the driving under the influence charge.

The Assistant City Attorney testified that the defendant was sworn and testified and, over objection of the defense, he was permitted to testify as to the questions and answers which are the basis of the four counts of the perjury information. He admitted that he did not have a clear recollection of all of the evidence. It is our opinion that it was error to permit him to so testify. The court reporter at the traffic offense trial testified in the perjury trial. The testimony of the court reporter, either in reading the reporter's notes or in the use of a properly identified transcript, is the evidence of highest quality. The failure of the Deputy County Attorney to properly prepare his case in relation to the testimony of the court reporter does not entitle him to use evidence of lesser quality. We are not called upon to rule as to the admissibility of the testimony of a spectator or participant in a trial wherein there was no court reporter or where the court reporter's notes or transcript are not available.

On redirect examination the Assistant City Attorney testified that the trial related to an accident which occurred near the intersection of 32nd Avenue and Roosevelt. He also testified that the events occurred on the night of the 4th of November or the early morning hours of the 5th of November 1964. The questions which were addressed to the defendant and his answers as reflected by Exhibit I relate to an incident which did not occur on the 4th or 5th of November but occurred on the 4th or 5th of October.

After the State rested in the perjury trial, the defendant moved for a directed verdict, pointing out the discrepancy in dates and urging a material variance. The Deputy County Attorney acknowledged the variance and chose to stand on the record without seeking leave to reopen. The motion for directed verdict was denied. If it be that the Deputy County Attorney was attempting to convict the defendant of perjury in relation to the defendant's testimony concerning an accident which occurred on the 4th or 5th of October, we deem the record to have shown material variance. Had the defendant then rested, it is conceivable that he could have been convicted of an offense which he did not commit, namely, for falsely testifying in relation to an event which did not occur and in connection with a trial wherein he was not charged with the events testified to in the State's case. By proceeding with the presentation of a defense, the defendant waived his motion for directed verdict. State v. Weis, 92 Ariz. 254, 375 P.2d 735 (1962).

The defendant understandably elected to prove that it was not possible for the accident to have happened in November. In the face of Exhibit I being in evidence, the defendant elected to withdraw his objections to Exhibit II, and the trial court directed that Exhibit II be marked in evidence as a

**324**

State's Exhibit. The deputy clerk of the court marked the exhibit as a defendant's Exhibit. The defense offered evidence that the accident could not have happened on the 4th or 5th of November. The defendant elected to not testify. After the defense rested, and over objection, the State was granted leave to "reopen for one thing". Witnesses, including Mona Santillanes, were recalled to correct their testimony as to the date of the events.

 Great discretion is allowed to the trial judges in relation to order of proof and in relation to the granting of leave to reopen. State v. Favors, 92 Ariz. 147, 375 P.2d 260 (1962); State v. Farrell, 1 Ariz. App. 112, 399 P.2d 915 (1965). In our opinion, this broad discretion was erroneously exercised. The Deputy County Attorney elected to stand on his case in chief after knowledge of a major variance. The defendant was forced into a crucial tactical decision. He elected to proceed to discredit the State's witnesses as to the date of the events. We cannot speculate as to the decision which the defendant might have made had the correct dates been set forth in the State's case in chief.

██ After being granted leave to reopen, the State called as one of its witnesses, in relation to dates, the same Assistant City Attorney, who prosecuted the traffic offense trial and who testified on the State's case in chief in the perjury trial. He based the change in his testimony as to the date of the accident upon his checking the transcript and upon his recollection of having read the correct date in the police report and in the accident report. This testimony was received over objection of the defense. The objection should have been sustained. This was not past recollection refreshed. It was hearsay testimony relating to facts this witness could not have testified to as a matter within his own knowledge.

In addition to recalling a number of the witnesses who were presented in the case in chief, a new and somewhat devastating witness was called. A portion of her testimony could be considered in the nature of reopening as to date. Her testimony could not be considered in the nature of impeachment, the defendant not having testified and Exhibit II being a State's Exhibit. If her testimony could have been considered as impeachment it was in the nature of impeachment as to the testimony of the defendant's witnesses at the traffic offense trial and there were no foundational impeaching questions presented.

Upon the close of all of the evidence an appropriate motion for directed verdict was again made and denied.

██ Before the answers to the questions set forth in Counts III and IV can be considered to be perjury, the evidence must disclose that the defendant did "run" from the scene of the accident. In this connection we cannot construe the word "run", contained in the questions in the broad sense of "departing from". In answer to the question "Did you run?" the defendant could truthfully answer "No, I did not run, I drove my car". The offense with which he was charged was not "running from the scene of an accident" but the offense of "leaving the scene of an accident". The record discloses that the Assistant City Attorney planned his questions in advance of the traffic offense trial. He planned well, but without sufficient attention to the necessary details. The only evidence relative to any departure on foot by the defendant was not from the scene of the accident, but was from the vicinity of 318 North 32nd Avenue and that evidence was that he walked. We do not condone perjury. On the other hand, it must be proved. The evidence does not support Counts III and IV.

██ The record does not disclose any indication that the court was informed that the defendant contemplated taking the witness stand in the perjury trial. At one stage of the presentation of the defense, the defense asked for a brief continuance to await the arrival of the next witness. The trial court was understandably inter-

ested in having the case progress and stated:

"THE COURT: Well, we'll recess to 3:00 o'clock and *if Mr. Cousins is going to take the stand you can put him on until that time.* We will stand at recess until 3:00 and *the jury is reminded of the admonition previously given."* (Emphasis added)

We are confident that this damaging and erroneous comment by the court in the presence of the jury was pure inadvertence.

■ The record does not disclose a request by the defendant for an instruction relative to the right of a defendant to not testify. It is error to instruct on this subject unless the defendant so requests. Notwithstanding the absence of a request, the court instructed on the subject as follows:

"It is the constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take the failure into careful consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably draw (sic) therefrom both unfavorable to the defendant are the more probable. The failure of the defendant to deny or explain evidence against him does not, however, create a presumption of guilty (sic) or by itself warrant an inference of guilt, nor does it relieve the presecution (sic) of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

Even if the defendant had requested an instruction on this subject it is our opinion this instruction is clearly erroneous and prejudicial. In effect the trial judge instructed that the jury was free to consider the defendant's silence as an acknowledgement of the truth of the State's evidence and, that when an accused exercises this constitutional right to remain silent, the exercise of that right may be considered against him. The foregoing instruction and the court's comment quoted above require a reversal of this case as to Counts I and II.

There are other portions of the record which we could discuss, such as the granting of the State's motion to strike Exhibit I at the close of all of the evidence, leaving only the questions and answers in issue. The State, in support of its motion, did not urge the erroneous ruling by the court. We do not comment upon the question as to whether this erroneous ruling could have been cured.

The defendant urges that it was error for the trial court to refuse defendant's requested instruction which commences:

"A conviction of perjury may not be based upon the uncorroborated testimony of a single witness or upon evidence which is wholly circumstantial. Perjury must be proved by the testimony of two witnesses or of one witness and corroborating circumstances * * *."

In view of Section 13–566 A.R.S. herein quoted, the trial court properly refused to give the requested instruction.

We trust that on the new trial some of the potential problems presented in the record of the perjury trial will not be repeated. We trust that the jury will be informed more fully as to the issues which are to be tried to the end that it may arrive at a considered judgment relative to materiality.

This cause is reversed for a new trial as to Counts I and II and it is reversed with instructions to dismiss Counts III and IV.

CAMERON, J., and E. D. McBRYDE, Judge of the Superior Court, concur.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved of the consideration of this matter, Superior Court Judge E. D. McBRYDE was called to sit in his stead and participate in the determination of this cause.