VERNELL PEARSON *v.* STATE OF MARYLAND

[No. 7, September Term, 1975.]

*Decided September 16, 1975.*

The cause was argued before MORTON, DAVIDSON and LOWE, JJ.

*Raymond M. Faby, Assigned Public Defender,* for appellant.

*Gilbert Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, James I. Keane, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Leslie Stein, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court. LOWE, J., dissents and filed a dissenting opinion at page 203 *infra.*

Appellant was convicted by a jury sitting in the Criminal Court of Baltimore (Thomas, J., presiding) of murder in the second degree and the unlawful use of a handgun in the commission of a crime of violence. Sentences totaling 45 years were imposed. In this appeal it is first contended that the evidence was legally insufficient to sustain the convictions.

The record indicates that just before midnight on May 18, 1974, a police officer, in response to a call, discovered the blood splattered body of Ernest Leo Swigert, an elderly white man, lying on the floor in a house located at 817 S. Charles Street, Baltimore. In the next room he found the body of Lillian Foster, a female Negro, lying in a pool of blood. He observed that the lock on the entrance door had been broken. The autopsy report showed that the body of Swigert had sustained eight gunshot wounds and the body of Mrs. Foster had sustained a gunshot wound to the head from a weapon fired at close range.

The appellant was arrested at 4:30 a.m. on May 20, 1974. At the time of his arrest he was found sleeping in a vacant house on an old mattress. Two handguns were removed from his pockets in addition to a substantial quantity of live ammunition. A ballistic report indicated that one of the bullets found in the body of Swigert had been fired from one of the guns found on appellant. A fingerprint test indicated that appellant's palm print was found on the screen door of the house where the bodies were found. A stipulation read

into the record revealed that one of the guns found on appellant at the time of his arrest had been purchased by Lillian Foster on January 11, 1974.

The appellant did not testify.

The jury found appellant guilty of murdering Swigert but not guilty of murdering Mrs. Foster.

We cannot agree, as appellant contends, that the evidence was legally insufficient to sustain his convictions. The gun found on the appellant at the time of his arrest was proven to be the death weapon and this evidence, coupled with the evidence of his palm print having been found on the screen door of the house where the bodies were discovered, constituted ample evidence from which the jury could conclude beyond a reasonable doubt that appellant was guilty of murdering Swigert. *Williams and McClelland v. State*, 5 Md. App. 450; *Lawless v. State*, 3 Md. App. 652. That the murder was committed by the use of a handgun was clearly demonstrated.

The appellant next contends that the trial judge committed reversible error in giving the following instruction to the jury over the appellant's objection:

"It is the privilege of an accused not to testify in a criminal case and you should not entertain any presumption or inference against the defendant because of his absence from the stand. It is not to be considered against him, as he has the option but not the obligation to testify in a criminal case."

At the conclusion of the instructions to the jury, defense counsel advised the trial judge:

"We would also object to the Court having advised the jury that they are not to draw any inference of the defendant's guilt from his failure to testify. The defendant specifically requested this instruction not to be given because in the opinion of his counsel it is prejudicial; that part which discusses his privilege not to testify would indi-

cate to the jury that he might have testified had he chosen to do so. I did request the Court not give that charge because I felt it reemphasized his silence."

No argument and no citation of authorities in support of the contention are offered in the brief filed on behalf of appellant in this Court. On the other hand, the State in its brief discusses the pros and cons of the issue and has referred us to a number of authorities in support of the respective positions. The State's brief has been most helpful to the Court.

Many of the authorities are found in an Annotation in 18 A.L.R.3d 1335. It is there pointed out that in *Griffin v. California*, 380 U. S. 609, "it was held that the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the states by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instruction by the court that such silence is evidence of guilt." The Annotation observes that there has been conflict of authority as to whether it is proper under *Griffin* for a trial judge, over a defendant's objection, or in the absence of a request by the defendant, to instruct the jury that no inference should be drawn against the accused because of his failure to testify.

In *Russell v. State*, 398 S.W.2d 213, 215 (Ark. 1966), an instruction to the jury, over defendant's objection, was held to constitute reversible error, the Court stating: "If the accused is to have the unfettered right to testify or not to testify he should have a correlative right to say whether or not his silence should be singled out for the jury's attention."

Again, in *State v. Cousins*, 4 Ariz. App. 318, 420 P. 2d 185 (1966), it was held, without discussion, that it was error to give such an instruction in the absence of a request for such an instruction. *See also Gross v. State*, 306 N.E.2d 371 (Ind. 1974); *Villines v. State*, 492 P. 2d 343 (Okla. Cr. App. 1971); *State v. Zaragosa*, 6 Ariz. App. 80, 430 P. 2d 426 (1967).

On the other hand, the federal courts have held it proper for the trial court to give the instruction *sua sponte*. In

*United States v. Garguilo,* 310 F. 2d 249, 252 (2nd Cir. 1962), Judge Friendly persuasively reasoned:

> "There may be enough in this so that, as Judge Learned Hand said for this Court many years ago, 'It is no doubt better if a defendant requests no charge upon the subject, for the trial judge to say nothing about it * * *.' * * * But we agree also with the rest of Judge Hand's statement: 'but to say that when he does, it is error, carries the doctrine of self-incrimination to an absurdity.' * * * It is far from clear that such an instruction is prejudicial to a defendant; the chances are rather that it is helpful. The jurors have observed the defendant's failure to take the stand; in the absence of instruction, nothing could be more natural than for them to draw an adverse inference from the lack of testimony by the very person who should know the facts best. And 'despite the vast accumulation of psychological data, we have not yet attained that certitude about the human mind which would justify * * * a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court that the failure of an accused to be a witness in his own cause "shall not create any presumption against him." ' "
> [Citations omitted.]

*See also Hanks v. United States,* 388 F. 2d 171 (10th Cir. 1968); *Bellard v. United States,* 356 F. 2d 437 (5th Cir. 1966); *United States v. Woodmansee,* 354 F. 2d 235 (2nd Cir. 1965).

In *State v. Goldstein,* 400 P. 2d 368, 369 (Wash. 1965), where the jury was instructed at the request of the prosecution, and over the accused's objection, that no inference of guilt or innocence was to be drawn from the accused's failure to take the stand, it was held: "Although the court is not required to give such an instruction unless requested * * * we do not believe it prejudicial error should the instruction be given either on request of the state or on the court's own motion." [Citation omitted.] *See also State v.*

*Garcia,* 505 P. 2d 862 (N. M. 1972); *State v. Kennedy,* 203 N.W.2d 106 (Neb. 1972); *State v. Wallace,* 152 N.W.2d 266 (Iowa 1967).

An elaborate discussion of the problem is contained in the opinion of the California Court of Appeal in *People v. Brady,* 80 Cal. Rptr. 418, where, after pointing out that the Fifth and Fourteenth Amendments of the United States Constitution forbid either comment by the prosecution on an accused's failure to testify or instructions by the court that the failure to take the stand is evidence of guilt, the court stated, at 422-423:

> "The purpose of the *Griffin* rule is to prevent the accused's exercise of his constitutional privilege against self-incrimination from being judicially emphasized as affirmative evidence against him. [Citation omitted.]
>
> The instruction involved herein does not state that the defendant's silence may be construed as an indication of guilt. It is patently obvious to the jury when the accused fails to take the stand, and the instruction admonishes the jurors that the defendant is exercising his constitutional right in not testifying, and that his failure to testify is not to be considered in determining his innocence or guilt.
>
> The instruction in its present form (CALJIC 51) * * * is not violative of *Griffin* and constitutes an accurate affirmation of the accused's constitutional right against self-incrimination.
>
> We hold that it is not necessary for the trial court to give the instruction *sua sponte* but, if given by the court of its own volition, or at the request of the prosecution or the defendant, with or without objection, the instruction is proper."

We are inclined to agree that it is the better practice for a trial judge to honor the request of an accused to refrain from advising the jury that no inference of guilt should be drawn from his failure to take the stand. It may well be that

defense counsel, as a matter of trial tactics, would on occasion prefer that such instruction not be given on the theory that regardless of the fact that the instruction might be couched in terms favorable to the accused, it would serve to highlight, emphasize or single out the accused's failure to testify.

On the other hand, we are not prepared to hold, in the absence of showing actual prejudice, that the giving of such an instruction, in correct terms, is violative of the accused's Fifth and Fourteenth Amendment rights, compelling a reversal of the accused's otherwise proper conviction. The rule in *Griffin v. California, supra,* directs only that the trial judge refrain from instructing the jury that an accused's failure to take the stand may be the basis for an inference of the accused's guilt.

The accused is, of course, entitled to such an instruction if it is requested by him. We are not persuaded, however, that the giving of such an instruction by the trial judge *sua sponte,* or at the request of the prosecutor, even over the objection of the accused, constitutes reversible error in the absence of a showing that the accused suffered actual prejudice as the result of such instruction. Whether to give the instruction lies in the sound discretion of the trial judge and, unless an accused can show a clear abuse of that discretion, the action of the trial judge in giving such an instruction will not be disturbed if it is phrased in terms proper and fair to the accused.

In the case at bar, the appellant makes no contention that the instruction itself was improperly phrased and since there has been no showing that the appellant suffered actual prejudice as the result of the instruction, we cannot find that there was an abuse of the trial judge's discretion in giving the instruction, notwithstanding appellant's objection thereto.

Finally, we find no merit in the contention that the comments of the trial judge at sentencing were "so prejudicial as to negate the possibility of appellant receiving a fair sentence * * *." The comment specifically complained of is as follows: "The defendant's conduct in this case makes

it clear that he is a dangerous person to society, and his aggressive behavior, his violent criminal action resulted in the death of two people."

We cannot agree that this comment demonstrates on the part of the sentencing judge ill will, passion, prejudice or unworthy motive as contended by appellant. *See Bryson v. State*, 7 Md. App. 353.

*Judgments affirmed.*

*Lowe, J., dissenting:*

To argue that an instruction of a constitutional right may deny the accused the very protection the Constitution seeks to afford is, at first blush, seemingly incongruous if not absurd. I am convinced, however, that by emphasizing a defendant's right *not* to testify, over prior objection, his failure to have done so becomes so spotlighted that ". . . the light will penetrate the curtain sought to be drawn over it." *United States v. Garguilo*, 310 F. 2d 249, 252.

The majority has relied heavily upon Judge Friendly's "persuasively reasoned" opinion in *Garguilo* which they quote at length. That opinion rests upon the conclusion that because:

> "The jurors have [already] observed the defendant's failure to take the stand; in the absence of instruction, nothing could be more natural than for them to draw an adverse inference from the lack of testimony by the very person who should know the facts best."

However, in *Griffin v. California*, 380 U. S. 609, 614-615 the Supreme Court expressly rejected that very reasoning. The Court felt that in such instances

> ". . . the inference of guilt is not always so natural or irresistible. . . ."

The Court went on to recognize that:

> "What the jury may infer, given no help from the

court, is one thing. What it may infer when the Court solemnizes the silence of the accused into evidence against him is quite another."

In distinguishing *Griffin* the majority correctly notes that the strict rule espoused in *Griffin* directs only that the trial judge refrain from instructing the jury that an accused's failure to take the stand may be the basis for an inference of the accused's guilt. The purpose of the *Griffin* rule, however, is to prevent the accused's exercise of his constitutional privilege against self-incrimination from being judicially emphasized as evidence against him. Logically then, should not the *Griffin* reasoning apply equally whether the inference is aroused affirmatively or negatively?

The majority acknowledge that the trial judge should respect the accused's request for no instruction, but place an impossible burden on him to show "actual prejudice" when his request is denied. Certainly if a defendant's silence were spotlighted by a cunning prosecutorial argument, couched as a negative pregnant, the majority would find sufficient possibility of the "actual prejudice" which it could not see when illumination of the silence had come less auspiciously, but more persuasively from a judge, in the form of an instruction given over prior objection. Recognizing that a convicted defendant is precluded from inquiring into jurors' reasons for their verdicts, what evidence could an accused possibly add to his conviction by that jury to indicate the probable presence of actual prejudice?

While I would not recommend the practice, I agree that such an instruction given *sua sponte* but *without* prior objection is not error, recognizing as the majority points out, however, that there is a division of authority even there. Anno. 18 A.L.R.3d 1335. I am convinced that the trend is toward disallowing a charge concerning silence when an objection is interposed.[1] I am more convinced by the simple

---

1. See *e.g.*, Russell v. State, 398 S.W.2d 213 (Ark. 1966); People v. Molano, 61 Cal. Rptr. 821 (1967); Villines v. State, 492 P. 2d 343 (Okla. 1971); Mosby v. State, 440 S.W.2d 230 (Ark. 1969); Gross v. State, 306 N.E.2d 371 (Ind. 1974); and State v. White, 285 A. 2d 832 (Me. 1972).

logic of the implied answer to the rhetorical question of the curate in Cervantes' *Don Quixote* "... can there ever be too much of a good thing?". Even constitutional rights can be force-fed to a reluctant defendant until he is choked by the well intended benefactor. It is for that reason, among others, that a defendant may waive his rights, even constitutional ones.

I am persuaded by the reasoning of Mr. Justice Frankfurter in *Bruno v. United States*, 308 U. S. 287, 294 [2] as he responded "To the suggestion that it benefits a defendant who fails to take the stand not to have the attention of the jury directed to that fact...." Justice Frankfurter continued:

> "... it suffices to say that, however difficult it may be to exercise enlightened self interest, the accused should be allowed to make his own choice when an Act of Congress authorizes him to choose."

If an accused is "entitled as a matter of right to have the trial judge tell the jury it must not attach any importance to the defendant's failure to testify", *see Bruno, supra*, 308 U. S. at 294, he should have the correlative right to say whether or not his silence should be singled out for the jury's attention.

I respectfully dissent.

---

**2.** In Bruno the Supreme Court found error in the absence of the charge after defendant had requested it. In a dissenting opinion in United States v. Gainey, 380 U. S. 63, 73, Mr. Justice Douglas described Bruno:

> "Just as it is improper for counsel to argue from the defendant's silence, so is it improper for the trial judge to call attention to the fact of defendant's silence. Indeed, under 18 U.S.C. Sec. 3481 the defendant is entitled as a matter of right to have the trial judge expressly tell the jury that it must not attach any importance to the defendant's failure to testify; *or, if the defendant sees fit, he may choose to have no mention made of his silence by anyone.* Bruno v. United States, 308 U. S. 287, 84 L. Ed. 257, 60 S. Ct. 198." [Emphasis added].