UNITED STATES of America, Appellee,

v.

Max L. SHULMAN, Appellant.

No. 687, Docket 79–1340.

United States Court of Appeals,
Second Circuit.

Argued Dec. 20, 1979.

Decided Feb. 21, 1980.

E. Barrett Prettyman, Jr., Washington, D. C. (Carol A. Mutter, Nancy G. Yates, and Hogan & Hartson, Washington, D. C., on the brief), for appellant.

Federico E. Virella, Jr., Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., and Howard W. Goldstein, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before SMITH, FEINBERG and TIMBERS, Circuit Judges.*

TIMBERS, Circuit Judge:

After an eleven day jury trial in the Southern District of New York, Charles L. Brieant, District Judge, appellant Max L. Shulman was convicted on one count of aiding and abetting the offer of a bribe to an Internal Revenue Service employee in violation of 18 U.S.C. §§ 201(b) and 2 (1976).[1] On appeal, appellant urges (1) that the evidence was legally insufficient to sustain his conviction for aiding and abetting;

---

* Pursuant to § 0.14 of the Rules of this Court, this appeal is being determined by Judges Feinberg and Timbers who are in agreement on this opinion. Judge Smith, who heard the argument, unfortunately died on February 16, 1980. Prior to his death Judge Smith voted to affirm and was in agreement with his colleagues on all issues in the case. He did not have the opportunity, however, to see this opinion prior to his death.

1. Shulman also was charged with one count of conspiring to defraud the United States and to offer a bribe in violation of 18 U.S.C. § 371 (1976). After the close of the government's case, Judge Brieant entered a judgment of acquittal on this count on the ground that the government had failed to prove any overt acts committed pursuant to the alleged conspiracy.

(2) that the district court erred in admitting tape recordings of certain conversations between appellant and a witness and in charging the jury with respect to appellant's admissions on those tapes; (3) that the district court erred in admitting tape recordings of certain conversations between government witnesses as prior consistent statements; and (4) that the conduct of the government in investigating and prosecuting the case deprived appellant of due process. After careful examination of appellant's claims, we conclude that they are without merit. We affirm.

## I.

At trial, evidence was adduced from which the jury could have found as follows. Max L. Shulman, the Chairman of the Board of Mays Department Stores, had served since February 1976 as an executor of the estate of his mother-in-law, Celia Weinstein. As executor, Shulman hired Henry Brooks, a private real estate appraiser, to appraise various real properties which comprised the Weinstein estate. After Brooks made his appraisal, Charles Rocoff, an IRS appraiser, was assigned to review Brooks' valuations and to determine the fair market value of the properties. Rocoff appraised the properties at more than twice the amount of Brooks' valuations.[2]

On August 23, 1978 Brooks and Rocoff met for lunch at Brooks' office. When Brooks complained about the IRS valuation of the Weinstein properties, Rocoff told Brooks that he wanted to be paid to lower the IRS valuation. Brooks told Rocoff that he would see what could be done. On September 21 Brooks and Rocoff met again. Rocoff told Brooks once more that he wanted to be paid to lower his valuation of the properties. He further stated that he would accept $7500 to do so. Brooks told

Rocoff that he would ask the Weinstein family for $10,000. Out of this amount, Brooks said that he would give $7500 to Rocoff and keep $2500 for himself. Brooks stated that he would find out if the money could be arranged and then get back to Rocoff.

In October 1978 Brooks met with Shulman.[3] Brooks informed Shulman that the IRS valuation figures could be lowered, but that the IRS agent wanted to be paid off for lowering them. Shulman responded, "Okay, see what you can do and come back with some figures." Brooks agreed and left. He then met with Rocoff and told him that "the money that he wanted was . . . available, and [Rocoff] should start working on the figures and get them lowered."

Brooks and Rocoff subsequently met on several occasions in October and early November to discuss the valuation of the Weinstein properties. On November 13, however, Brooks was taken into custody by IRS agents in connection with an investigation of corruption in the Internal Revenue Service Valuation Group. After being questioned about various other bribes, Brooks agreed to cooperate with the government and signed a cooperation agreement. Brooks then consented to the tape recording of several of his meetings and telephone conversations with Rocoff[4] during which the two discussed Rocoff's bribe to lower the valuation of the Weinstein properties. On November 27 Brooks met Rocoff. Rocoff supplied Brooks with lowered valuation figures;[5] at the same meeting Brooks gave Rocoff money which he said had been provided by the Weinstein family, but which in fact had been provided by the government. After departing with the money, Rocoff was arrested. He, too, decided to cooperate with the government and signed an agreement to that effect.

2. Brooks valued the various properties at $4,521,612; Rocoff valued the same properties at $9,723,409.

3. At trial the government asserted that this meeting took place either in late September or early October. Shulman himself testified that he met with Brooks on October 6.

4. Videotapes also were made of some of the Rocoff-Brooks meetings.

5. Brooks' recapitulation sheet showed that the valuation figures provided by Rocoff had been lowered from approximately $9.7 million to approximately $5.4 million.

On December 7 Brooks, wearing a recording device, met with Shulman. Brooks referred to their earlier meeting in October at which Shulman had told Brooks to "see what you can do and come back with some figures." They then discussed the valuation figures lowered by the IRS agent. Shulman, after expressing some dissatisfaction over the amount of money required to bribe the agent, agreed to supply $10,000 to pay off Rocoff.

On December 11 Brooks met again with Shulman.[6] Brooks asked Shulman if he remembered their earlier meeting (i. e., the one in October) where they had "agreed maybe we can do something." Shulman acknowledged that he remembered the discussion. Shulman then gave Brooks an envelope containing $10,000 in cash which both men counted. Brooks left the meeting and turned the money over to government agents.

On March 9, 1979 the indictment upon which Shulman was tried was returned in the Southern District of New York charging him with the offenses stated above.[7] The trial began on March 12, 1979 and concluded on March 26, 1979 when the jury convicted him on the aiding and abetting count. On September 4, 1979 he was sentenced to a term of imprisonment of a year and a day and was fined $20,000. Execution of the prison sentence was suspended and he was ordered to serve a one year term of probation. From the judgment of conviction entered September 4, 1979, this appeal has been taken.

## II.

In the light of these facts and prior proceedings, we turn first to Shulman's claim that the evidence was insufficient to sustain his conviction for aiding and abetting the offer of a bribe to Rocoff in October 1978.[8]

Shulman argues that the evidence established that an illegal bribe offer was made by Brooks to Rocoff in August or September 1978, *before* Shulman told Brooks to "see what you can do and come back with some figures." Shulman argues, therefore, that he should not have been found guilty of aiding and abetting the bribe offer because the offer was completed *prior* to his involvement.

█ A person cannot be found guilty of aiding and abetting a crime that already has been committed. *E.g., United States v. Freeman*, 498 F.2d 569, 575 (2 Cir. 1974); *Roberts v. United States*, 416 F.2d 1216, 1221 (5 Cir. 1969). We do not believe, however, that the record establishes that the offer of a bribe to Rocoff in fact was completed before Shulman and Brooks met in October. Prior to the October meeting Brooks had no authority to offer a bribe on behalf of Shulman. At that time Brooks also had no money to offer as a bribe and he had no promise that any money would be available. The jury therefore was justified in viewing the pre-October meetings between Brooks and Rocoff simply as acts of preparation which established Rocoff's willingness to accept a bribe, the amount of the bribe sought by Rocoff, and Brooks' willingness to solicit the bribe from Shulman. Since approval by Shulman of the actual offer of a bribe was required, however, Brooks had no *authority* or *ability* to pay off Rocoff before the October meeting with Shulman. *United States v. Jacobs*, 431 F.2d 754, 760 (2 Cir.), *cert. denied*, 402 U.S. 950 (1970) (offer of bribe was complete when defendant "expressed an ability and desire to pay" bribe). Only after Shulman authorized the payment of a bribe at the October meeting, and Brooks so informed Rocoff, was the actual offer of a bribe completed.

6. This meeting also was tape recorded.

7. This March 9, 1979 indictment superseded an indictment filed March 5, 1979. The March 5, 1979 indictment itself had superseded the original indictment in the case, filed December 18, 1978.

8. Shulman was not charged with the commission of any crime arising out of his transactions with Brooks in December 1978. The actual transfer of the bribe money from Shulman to Brooks in December took place in Brooklyn which is in the Eastern District of New York. As to this, venue did not lie in the Southern District of New York.

Shulman alternatively argues that, even if the offer of a bribe was not completed prior to Shulman's October conversation with Brooks, the evidence nevertheless was legally insufficient to support his conviction for aiding and abetting the offer of a bribe. In support of this argument, Shulman asserts that Brooks' testimony should be held to be incredible as a matter of law and that the district court committed plain error in failing to instruct the jury on the meaning of aiding and abetting. We are unconvinced by either aspect of this argument.

Viewing the evidence in the light most favorable to the government, as we must at this stage of the case, *Glasser v. United States*, 315 U.S. 60, 80 (1942), the jury surely could have found that Shulman gave Brooks carte blanche authority to negotiate a bribe with Rocoff. Brooks testified that during the October meeting he told Shulman that "the agents want to get paid off", and Shulman replied, "Okay, see what you can do and come back with some figures." Brooks then met with Rocoff and told him that "the money that he wanted was . . . available, and [Rocoff] should start working on the figures and get them lowered." If the jury believed Brooks' testimony,[9] then clearly there was sufficient evidence to establish that Shulman aided and abetted the offer of a bribe to Rocoff.

■ Presumably recognizing that Brooks' testimony, if credited by the jury, indeed was sufficient to support the jury verdict, Shulman contends that Brooks' testimony should be held to be *incredible as a matter of law*. We disagree. Under our system of jurisprudence, as noted above, normally the resolution of issues of credibility is exclusively the province of the jury. *United States v. Taylor*, 464 F.2d 240, 245 (2 Cir. 1972); *United States v. Weinstein*, 452 F.2d 704, 713–14 (2 Cir. 1971), *cert. denied*, 406 U.S. 917 (1972). While theoretically the testimony of a witness might be so incredible that no reasonable juror could believe him, *see Lyda v. United States*, 321 F.2d 788, 794–95 (9 Cir. 1963), we cannot characterize Brooks' testimony here as such. Much of his testimony was corroborated by Rocoff and by Shulman's own tape recorded admissions. Furthermore, at the close of the government's case and again in a post-trial motion, Shulman moved for a judgment of acquittal on the ground that Brooks' testimony was incredible as a matter of law. Judge Brieant, who was in the best position to judge the credibility of the witness, including his demeanor, ruled that Brooks' testimony could not be characterized as legally incredible.[10] Appellant invites us to overturn the judgment of both the jury and the district judge on the credibility of a witness which they observed at trial and which we did not. The record does not support appellant's claim. We decline the invitation.

■ Finally, with respect to his claim that the evidence was insufficient to sustain his conviction for aiding and abetting the offer of a bribe to Rocoff, appellant contends that the district court committed plain error in failing to instruct the jury on the meaning of "aiding and abetting", citing the government's "strained theory" of the crime charged and the "issue of Brooks' credibility". We hold this claim to be without merit. Judge Brieant declined to give the usual aiding and abetting charge[11] be-

---

**9.** Shulman testified that Brooks never told him during the October meeting that the agents wanted to be "paid off" and that he never responded "Okay, see what you can do . . . ." The resolution of such a conflict in the testimony of course is one of the classic functions of the jury. Here the jury chose not to believe Shulman.

**10.** Appellant argues that Judge Brieant improperly considered Brooks' testimony in a separate case, *United States v. Stahl*, 78 Cr. 892–LBS, in ruling that Brooks' testimony in the instant case was not legally incredible. Judge

Brieant's reference to the *Stahl* case, when read in context, fairly should be regarded as no more than an incidental reference to another case in which Brooks proved believable. We do not read Judge Brieant's reference to *Stahl* as suggesting that he relied on Brooks' testimony there in reaching his decision on Shulman's motion in the instant case.

**11.** The usual charge actually was requested by the *government*; Shulman did not submit a requested charge on the issue. Furthermore, Shulman did not object to the charge as given.

cause the government's evidence did not show that Shulman merely associated himself with Brooks' criminal conduct; rather the government's theory of the crime was that Shulman *caused* Brooks to bribe Rocoff. In view of the nature of the government's case, the judge saw no need to charge the jury on the traditional concepts of "mere presence" at the scene of a crime or "negative acquiescence" in the commission of a crime. *United States v. MacDougal-Pena*, 545 F.2d 833, 835–36 (2 Cir. 1976); *United States v. Garguilo*, 310 F.2d 249, 254 (2 Cir. 1962); *United States v. Hill*, 464 F.2d 1287, 1289 (8 Cir. 1972). Instead, the judge read to the jury the language of 18 U.S.C. §§ 2 and 201(b) and charged that Shulman could be convicted only if the jury concluded beyond a reasonable doubt that Shulman, acting through Brooks, *caused* the offer of a bribe to be made to Rocoff. Before a verdict of guilty could be returned, the court charged, the jury was required to find that Shulman "counseled or commanded or caused Brooks to make a corrupt offer to Rocoff." Read as a whole, the court's charge required the jury, before it could convict, to find not only that Shulman actively participated in the bribe offer, but that he was the actual proponent of the bribe. As such, the charge as given was more favorable to Shulman than the charge on aiding and abetting which he now claims was required. We surely cannot say that the district judge committed plain error in instructing the jury on this issue.

## III.

We turn next to appellant's claims of error with respect to the admission in evidence of certain tape recordings of conversations between Shulman and Brooks. He claims that the district court erred in admitting tape recordings of such conversations on December 7 and December 11, 1978. He further claims that this error was compounded by what he asserts as the court's erroneous charge on the legal significance of "admissions" made by Shulman on the tapes. We find no merit in either claim.

During the direct examination of Brooks, the government offered in evidence two tape recorded conversations between Brooks and Shulman which Brooks had recorded in December 1978. The purpose of the tapes was to corroborate Brooks' testimony that he and Shulman had made a prior agreement (i.e., at their October meeting) to bribe the IRS agent. The court allowed the tapes in evidence on the ground that they constituted admissions and adoptive admissions by appellant.[12] The court gave repeated instructions to the jury that the tapes were *not* evidence of any crime committed in December but were received only to support the government's version of the October agreement between Brooks and Shulman.

On appeal, Shulman argues (1) that the tapes in fact did *not* contain any admissions adopted by him and hence were received in evidence improperly, and (2) that, even if certain portions of the taped conversation *were* construed as adoptive admissions, the receipt of the *entire* tapes in evidence was prejudicial error, since major portions of the tapes did not relate to his October meeting with Brooks.[13]

**12.** Originally, the court admitted the December 11 tape but excluded the December 7 tape. Prior to the playing of the December 11 tape, however, the defense informed the court that it wanted to offer the December 7 tape as part of its own case. In view of this defense strategy, the court reversed its earlier ruling and allowed the government to introduce the December 7 tape as well as the December 11 one. The court subsequently expressed its belief that the December 7 tape, like the December 11 one, could be viewed as supporting the government theory that Brooks and Shulman had discussed the offer of a bribe at their October meeting.

**13.** As stated above, Shulman was charged only with aiding and abetting the offer of a bribe in *October*. Although the bribe was further discussed and the payoff money was delivered to Brooks by Shulman in December, these latter events were not part of the crime for which Shulman was indicted. Appellant therefore claims that the December 7 and December 11 tapes document "additional crimes", rather than the one charged, with resulting prejudice to him.

We consider first the claim that the December tapes did not contain admissions adopted by appellant.[14] The challenged tapes contained both Shulman's own statements and statements by Brooks made in Shulman's presence which Shulman either expressly adopted (i.e., by responding "right" or by agreeing in some similar manner) or else implicitly adopted by failing to object. Appellant concedes, as he must, that his own statements were admissible as non-hearsay admissions regardless of whether such statements were against his interest when made. Fed.R.Evid. 801(d)(2)(A); *United States v. Rios Ruiz*, 579 F.2d 670, 676 (1 Cir. 1978); 4 Weinstein's Evidence § 801(d)(2)(A)[01] (1979). Appellant argues, however, that *adoptive* admissions stand on a different footing. He contends that "an *adoptive* admission . . . must reflect the defendant's agreement with a third party's statement which incriminates the defendant." Since none of Brooks' statements incriminated him, so the argument goes, these taped statements did not qualify as adoptive admissions.

■ There is no express requirement in the Federal Rules of Evidence that a party can adopt only those statements which either incriminate him or are otherwise

against his interest. Fed.R.Evid. 801(d)(2)(B).[15] Similarly, the legislative history of Rule 801 does not support the view that adoptive admissions are limited to *incriminating* statements by third parties. We note, however, that the substantive content of a third party statement is not irrelevant to the characterization of a defendant's conduct as an adoption of that statement. Where the defendant's adoption of another person's statement purportedly is manifested by *silence*, or other ambiguous conduct, courts will consider the incriminatory content of the statement in order to determine whether the defendant actually has adopted the statement by his silence. The rationale of such cases is that a person ordinarily will respond to an incriminatory or defamatory statement with a denial, or at least with some indication that he objects to the statement as untrue. *United States v. Flecha*, 539 F.2d 874, 876–77 (2 Cir. 1976); McCormick, Law of Evidence § 270 (2d ed. 1972). But where the party unambiguously manifests adoption of another person's statement, the content of the statement need not be against his interest.[16]

■ In any event, we hold that the statements by Brooks in Shulman's presence in fact *were* against Shulman's interest, inasmuch as they tended to show that Brooks and Shulman had engaged in prior discus-

---

**14.** We assume arguendo that appellant has preserved his right to challenge on appeal the admission of both tapes. In indicating that he intended to introduce the December 7 tape as part of his own case, note 12 *supra*, appellant may well have waived any objection he had to the admission of that tape. *See United States v. Maultasch*, 596 F.2d 19, 26 (2 Cir. 1979).

**15.** Rule 801(d)(2)(B) provides simply that a "statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement of which he has manifested his adoption or belief in its truth."

The broad language of this rule is in sharp contrast to the hearsay exception for "statements against interest" made by unavailable declarants. Fed.R.Evid. 804(b)(3). Rule 804(b)(3) excepts a statement from the hearsay rule if it is "[a] statement which was at the

time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."

**16.** The cases cited by appellant are not to the contrary. *United States v. Fantuzzi*, 463 F.2d 683, 690 (2 Cir. 1972); *United States v. Metcalf*, 430 F.2d 1197, 1199 (8 Cir. 1970); *Arpan v. United States*, 260 F.2d 649, 655 (8 Cir. 1958). These cases support the view that the incriminating content of a third party statement is relevant only to the determination of whether the defendant's silence or other conduct constitutes adoption of the statement.

sions involving the offer of a bribe to an IRS agent. Contrary to appellant's contentions, these statements clearly were relevant, probative evidence, and were properly admitted.

In the December 7 tape, for example, Brooks made several references to their corrupt October conversation which Shulman did not contradict. Brooks then stated that the IRS agent wanted a payoff. Shulman did not object or express surprise; he merely responded, "What's the payment?" When told that the payment sought was $10,000, Shulman readily agreed to pay this amount. From this tape, the jury surely could infer that Shulman and Brooks had made a prior agreement in October to bribe the IRS agent, and in December were simply arranging the exact amount of the bribe.

Likewise the December 11 tape tended to show that an illegal agreement to offer a bribe had been made by Shulman and Brooks in October. In this tape Brooks said to Shulman, "Do you remember back in September, October when I first discussed this with you?" Shulman responded, "Right." Brooks then elaborated, "You know, you know we agreed maybe we can do something." Again Shulman responded, "Right." After this exchange, Brooks and Shulman counted the $10,000 payment. This tape contained express manifestations by Shulman that he acquiesced in the truth of Brooks' statements. Furthermore, the conversations tended to support the government's case that the original agreement to offer a bribe had been made in October. The tapes, therefore, were highly probative of crucial issues at trial. We hold that the district court did not err in admitting these tapes in evidence.

This brings us to appellant's related claim that the district court abused its discretion in admitting the *entirety* of the tapes rather than excluding those portions which did not refer directly to the October meeting. Appellant contends that the court committed reversible error by allowing the jury to hear segments of the tapes dealing with the valuation of the Weinstein properties, the request for the $10,000 payment, Shulman's agreement to pay the $10,000, and the counting of the money which Shulman delivered to Brooks.

For several reasons, we find this claim to be without merit. First, Shulman never requested the court to excise those portions of the tapes which he now contends were prejudicial. Second, it was within the discretion of the court to admit much of the material on the tapes as background material to aid the jury in understanding the events surrounding the taped conversations, even though it did not bear directly on the bribe offer. *United States v. Lubrano*, 529 F.2d 633, 637 (2 Cir. 1975), *cert. denied*, 429 U.S. 818 (1976); *United States v. Ruggiero*, 472 F.2d 599, 607 (2 Cir.), *cert. denied*, 412 U.S. 939 (1973). Third, the court repeatedly gave limiting instructions, cautioning the jury that the tapes were to be considered only insofar as they tended to show an illegal agreement in October between Brooks and Shulman. The court carefully instructed the jury that Shulman was not on trial for anything he did in December. Finally, but most importantly, the challenged portions of these conversations clearly were probative of the issue of Shulman's prior involvement in or knowledge of the bribe offer. If an agreement to offer a bribe had not been reached in October between Brooks and Shulman, then it is unlikely that Shulman would have agreed so readily to a specific amount for the bribe and have delivered the money to Brooks in December. In view of the foregoing, we hold that the district court did not abuse its discretion in admitting the December tapes in their entirety.

■ Finally, on this aspect of the appeal, appellant argues that the district court compounded its error in admitting the tapes in evidence by giving an erroneous charge on the legal significance of "admissions" made by Shulman on the tapes. Since we hold that the court properly admitted the tapes, there was no error to compound.

Moreover, we believe that the court's charge on admissions was proper.[17]

Judge Brieant instructed the jury that "[a]dmissions or statements by a defendant are among the most effectual proofs in law." He further stated that the jury was "entitled to give weight to the defendant's admission in this case . . . as truth of the facts you find that he has admitted voluntarily . . . ." The district judge did not suggest to the jury that Shulman ever had admitted his *guilt*. Rather, he correctly equated "admissions" with "statements", *see* Fed.R.Evid. 801, and correctly instructed the jury that it should determine for itself what weight to give the *facts* which the *jury* found Shulman had admitted. We hold that the charge was both legally correct and fair to Shulman.

## IV.

We turn next to appellant's claim that the district court also erred in admitting tape recordings of certain conversations between Brooks and Rocoff. Appellant contends that, since these conversations took place after Brooks had begun cooperating with the government,[18] the conversations should not have been admitted as prior consistent statements.

At the outset, we note that there is a substantial question whether appellant has preserved his right to raise this claim on appeal. At trial, he objected to the admission of the Brooks-Rocoff tapes on the ground that, since the conversations took place after the alleged conspiracy had terminated,[19] they were not declarations of co-conspirators. The court agreed, but ruled that the tapes nevertheless were admissible because they were probative of Brooks' and Rocoff's credibility. The court stated that it would give a limiting instruction to the jury to this effect[20] and Shulman did not object.

As each tape was admitted in evidence, Shulman made a general objection without further explanation. Only in his *post*-trial motion did he advance his theory that the statements were inadmissible because they did not meet the specific requirements for prior consistent statements. In view of Shulman's failure during trial to specify his reasons for objecting to the admission of these conversations, there is substantial merit in the government's argument that

17. Neither the government nor the defense submitted a requested instruction on admissions. At the conference called by the judge to discuss the proposed charge, however, the judge informed both sides of the instructions that he intended to give the jury on admissions. Shulman did not object to any of the language in the proposed instructions.

The portion of the charge on admissions as given was as follows:

"Admissions or statements by a defendant are among the most effectual proofs in law. They constitute the strongest sort of evidence against the party making the admissions or statements of the facts, and you are entitled to give weight to the defendant's admission in this case whether made on the stand while testifying before you during the trial, or made in a tape recording, or made in any conversation with a witness whose version of the conversation you believe as truth of the facts you find that he has admitted voluntarily, and knowledgeably, either on the stand before you while he was testifying or in conversations which you may find he had with other witnesses and in which the other witnesses in your opinion have truthfully report-

ed to you; or which he has said in conversations appearing on tape."

After the charge was given, Shulman requested that the court give a supplemental charge, instructing the jurors that it was their job to determine if, in fact, he had made any admissions of the crime charged. The court declined, explaining that the charge had not suggested that Shulman ever made admissions *of the crime charged* but had simply indicated that Shulman may have made admissions of certain facts. We agree with the court's handling of this request.

18. Brooks was first taken into custody and questioned by IRS agents on November 13, 1978. He signed the cooperation agreement on November 16. The taped conversations in question took place between November 20 and November 27.

19. *See* note 1, *supra*.

20. The court subsequently instructed the jury on several occasions that the conversations were admitted solely to assist the jury in assessing the credibility of Brooks and Rocoff.

Shulman has waived his right to assert this claim on appeal. *United States v. Rubin*, 609 F.2d 51, 61–63 (2 Cir. 1979); *United States v. Maultasch, supra*, 596 F.2d at 24.

■ We find it unnecessary, however, to rest our decision on this procedural ground. Assuming arguendo that the objection by appellant was sufficient, we hold that the Brooks-Rocoff conversations in fact were properly admitted as prior consistent statements for the limited purpose of bolstering the credibility of the government's witnesses.

In *United States v. Quinto*, 582 F.2d 224 (2 Cir. 1978), we set forth a three-part test under Fed.R.Evid. 801(d)(1)(B) for determining the admissibility of prior consistent statements. First, the prior statement must be consistent with the witness' in-court testimony. Second, the prior statement must be offered to rebut an express or implied charge against the witness of recent fabrication or improper motive. Third, it must be demonstrated that the statement was made prior to the time that the supposed motive to falsify arose. *Id.* at 233–34; *United States v. Check*, 582 F.2d 668, 680–81 (2 Cir. 1978).

In the instant case, the Brooks-Rocoff conversations met all three requirements. First, the conversations were consistent with the in-court testimony of Brooks and Rocoff, supporting their version of the events which formed the basis of the crime charged against Shulman. Second, the conversations were offered to rebut implicit defense charges that the testimony of the witnesses was fabricated. The defense claimed that Brooks and Rocoff were "confessed liars" who would "do anything to save themselves". The defense argued that "pressure" was put on Brooks and Rocoff to "tailor their story" to fit the government's case, and that "personal advantage [had] flowed to [Brooks] for changing the truth to a lie." Third, the Brooks-Rocoff conversations took place prior to the time that the

supposed motive to falsify arose. Whatever motive Rocoff had to falsify his testimony could not have arisen prior to the date of his confrontation with federal agents and his decision to cooperate with the government; yet all of the conversations in question took place before these events. Similarly, although Brooks was cooperating with the government during this period, the defense itself suggested that his supposed motive to falsify did not arise when Brooks signed the cooperation agreement on November 16, but instead arose some two weeks after Brooks began cooperating with the government, or about December 1. It was at that point, according to the defense, that Brooks—who until then had not implicated Shulman—"changed his story [because] it served his interest." Yet the taped conversations took place between November 20 and November 27, prior to Brooks' decision, according to the defense, to "chang[e] the truth to a lie."

We hold that the *Quinto* requirements were satisfied in this case,[21] and that the tapes of the Brooks-Rocoff conversations were properly admitted even if the objections to their admission made by the defense at trial were sufficiently specific to preserve the issue on appeal.

### V.

■ Finally, we come to appellant's claim that the conduct of the government in this case "was so outrageous as to violate fundamental principles of due process and bar conviction." This claim can be disposed of summarily.

The prosecution of Shulman arose out of a lengthy and extensive government investigation of corrupt activities within the Internal Revenue Service Valuation Group. The investigation culminated in December 1978 with the filing of seven indictments charging numerous persons, including Shulman, with bribery and related offenses. Appellant claims that the government "was

---

**21.** Furthermore, even if Brooks' statements had not met the *Quinto* requirements, they would have been admissible in order to place Rocoff's statements in context. The district court made it clear that the limiting instructions applied to Rocoff's statements on the tapes as well as to Brooks' statements.

aware of this corruption and yet chose to ignore it, allowing further crimes to be committed and more individuals to be ensnared in connection with those crimes." Specifically, appellant charges that the government knew that Brooks and Rocoff were corrupt, yet nevertheless decided to "look the other way" as Brooks and Rocoff "implicate[d] the defendant in one of their schemes." We find no basis for condemning the government's handling of the investigation. The government's decision to continue the investigation and to gather further evidence rather than immediately arrest the first handful of suspects which came to light does not strike us as improper or unusual. On the contrary, it was a sound investigative procedure and clearly within the government's discretion. We also reject appellant's contention that the government sent Brooks out to entrap him. The government sent Brooks to Shulman in December to seek corroboration of Brooks' story that Shulman had authorized him in October to bribe Rocoff. We have carefully examined all of appellant's charges of governmental impropriety in this case and we conclude that they are wholly unfounded. We hold that the government's conduct of this case was not improper and most certainly was not "outrageous". In no sense can it be said to constitute a bar to conviction.

### VI.

To summarize, we hold that:

(1) The evidence was legally sufficient to support the jury's verdict finding appellant guilty;

(2) The district court did not err in admitting the tape recordings of the December conversations between appellant and Brooks, or in instructing the jury on admissions contained on the tapes;

(3) The district court did not err in admitting the tape recordings of conversations between Rocoff and Brooks as prior consistent statements; and

(4) The conduct of the government during the investigation and prosecution of this case was not improper.

Appellant was convicted of a serious offense after a fair trial on the basis of substantial evidence, including his own admissions.

Affirmed.