**UNITED STATES of America, Plaintiff,**

v.

**Jose RODRIGUEZ, Defendant.**

**79 Cr. 0018–CLB.**

United States District Court,
S. D. New York.

Sept. 15, 1980.

John S. Martin, Jr., U.S. Atty. by Mary Ellen Kris, Asst. U.S. Atty., New York City, for plaintiff.

Roland Thau, Federal Defender, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

The Court has considered all papers filed in behalf of defendant in support of his motion for a reduction of sentence pursuant to Rule 35, F.R.Crim.P. Oral argument has been heard. The Court has reviewed the presentence report and has engaged in informal discussions with an experienced Supervising United States Probation Officer. Recognizing the sincerity and vigor with which this application has been pressed, due deliberation has been had thereon.

Having regard to all relevant matters bearing on the exercise of judicial discretion in regard to this motion, the Court remains convinced that the sentence was and is appropriate, and declines to reduce it.

While further discussion is probably not warranted, it should be noted that this sentence was imposed upon an adequate legal and factual foundation and the reasons therefor were fully stated in open court at the time. Defendant was enlarged on bail pending appeal, at his own request and in the interests of lenity. The sentence is fully within the Parole Commission's published guidelines for the case (Salient Factor of 11). While the Guidelines do not have the force of law, they carry some presumption of fairness and reason. When sentence was imposed, the Court distinguished this case from that of "the typical mail–sorter * * * who found a pre–printed envelope addressed to the March of Dimes and it has quarters in it", finding those persons to be situational offenders but concluding that this defendant committed a calculated crime. Tr. of Sentence p. 9.

In a supplemental submission, counsel for defendant alludes to a non–custodial sentence subsequently imposed by this Court

on September 4, 1979 in the unrelated case of *United States v. Shulman*, 78 Cr. 890–CLB (*aff'd* 624 F.2d 384 (2d Cir.1980):

> "I fervently believe that equality under the law invites comparisons. Very shortly after Mr. Rodriguez stood trial before Your Honor, one Max L. Shulman, Chairman of the Board of Mays Department Stores, was tried before you and convicted of offering a Ten Thousand Dollar bribe to a tax agent to reduce a tax assessment by some Four Million Dollars, in order to save about a Half Million Dollars in taxes. I am informed that Mr. Shulman also testified at his own trial, and that worthy gentleman was not suffering from any terminal ailments–except perhaps that of avarice–and that Your Honor saw fit to sentence that captain of commerce to a mere fine, and a suspended jail term of one year. I am informed that Mr. Shulman produced numerous letters from prominent members of the community and politicians, attesting to his various and sundry virtues as a merchant, philanthropist and civic leader. My client Mr. Rodriguez, a modest Puerto Rican mailman living on the lower east side, submitted no such testimonials of course, simply because he does not travel in the same circles as Mr. Shulman. Surely Your Honor must understand that a Nabob of commerce is almost required as a business proposition to cultivate the socially and politically prominent of this world.
>
> Disparity in sentences has always been a troublesome business for the community to understand. It is particularly vexing when this disparity cannot be explained on the basis that different Judges obviously have different views. In these two cases, Your Honor chose to incarcerate for a year and a half, a very modest hard working first offender who had stolen a watch, but not impose any jail time to a millionaire who sought to enrich himself further still, by corrupting a public official.
>
> There is rampant in the community the feeling that though all men are equal, the rich are more equal than the poor and that these latter ones fare much worse at the hands of sentencing judges. Should Mr. Rodriguez' sentence be permitted to stand as imposed, it might well prove perfectly the accuracy of the community's perception."

This Court shares the concern of counsel that the public shall perceive all this Court's judgments to be just, and does not ignore the current cant in the legal community about sentence disparity. Granted some sentence disparity probably exists in the courts of our nation. The affairs of men have never been conducted with perfection, they never will be, and we should keep striving in our pursuit of Justice. We recognize that sentence disparity when it exists is a serious evil, and all the more so, if as charged here, the claimed disparity favors a "philanthropist and civic leader," to the detriment of a "modest mailman." But at the end of the argument, all that a criminal can demand is a fair sentence, fair to himself and fair to organized society which is the victim of every crime. As noted above, the Court believes movant's sentence meets that test. The Court holds the same view about Shulman's sentence. A contention of disparity between the two cannot be maintained in reliance on a newspaper article describing Shulman's situation. Only by reference to the entire record of Shulman's trial, including sentencing proceedings and the non–public confidential pre–sentence report, could a successful attempt to compare these two cases be made. Even after such an impracticable comparison, some nuances would be unnoticed.[1]

If the comparison should show that the Court was too lenient with Shulman, and it will not, does this require that a fair sentence in another case be reduced so as to

---

1. The analysis of *Shulman's* case quoted above is factually incorrect even as to matters of public record. To begin with, Shulman, a 76 year old lawyer turned executive, did not "seek to enrich himself by corrupting a public official." The officials, employed in the Valuations Group for federal estate and gift tax audits, were already utterly corrupt. Through a private appraiser whom they used as a bagman, they solicited unlawful payments from executors and others. The amount of the bribe was fixed before the bagman ever solicited Shul-

compound one mistake with another? Does the pinpointing of one allegedly lenient sentence, or even one hundred, justify a conclusion that invidious class–oriented sentencing disparity is being practiced? Or that a sentencing judge is giving too much weight to testimonial letters of the sort more easily obtained by prominent felons whose prior lives were virtuous? We reject these suggestions implicit in the argument being made here.

It is too simplistic to suggest that because one malefactor has a higher profile than another, the former requires a sentence of greater severity than the latter. Nor should we drive from our Courthouse the concepts that under extenuating circumstances justice may be tempered with mercy, and that it is better to err, if error there be, on the side of lenity.

The motion is denied.

SO ORDERED.

man. A strong element of coercion was present in each case, in that excessively high appraisal values were proposed, accompanied by a representation on the part of the bagman that these figures could be reduced somewhat, but "they want to get paid". Of course this coercion did not excuse the payment. Defendant, a person of high standing in the community, could have complained to the authorities and should have done so. Neither Shulman nor his wife nor their children had any financial interest in the funds which would have been

saved as a result of the bribe, had the conspiracy been successful. The tax which would have been saved had the bribe been successful was ultimately determined at $41,000.00 (Shulman sentencing minutes, p.5). Shulman's isolated act was completely inconsistent with all of the positive elements of a long and productive life characterized by patriotic, civic and philanthropic effort, and devotion to duty and family. The probation report in *Shulman's* case recommended a non–custodial sentence.